# Bates & Rogers Construction Company and Workmen's Compensation Board of Kentucky v. Allen

(Decided March 28, 1919.)

## Appeal from Mason Circuit Court.

1. Appeal and Error—Workmen's Compensation Act—Findings of Fact by Board—When Conclusive.—The rule as to the conclusiveness of findings of fact only applies when there is a disputed issue of fact and on the facts the board makes a finding.

2. Appeal and Error—Workmen's Compensation Act.—Where Facts Are Not Disputed the Question is One of Law—Review by Courts. —If there is no issue of fact or if the facts are undisputed the question becomes one of law and the finding of the board is one of law and not of fact, and the right of the court to review it is authorized by that provision of the law allowing review when the order, decision or award is not in conformity with the act.

3. Master and Servant.—Workmen's Compensation Act—Knowledge of Injury By "Foreman" or "Boss."—Knowledge of the injury by a "foreman" or "boss" will be the same as if the employer in person had knowledge.

4. Master and Servant.—Workmen's Compensation Act.—"Knowledge of Injury"—What Is.—"Knowledge of the Injury" as used in the statute is not answered by knowledge of an accident or that an employee "got hit" with something. The knowledge that an employe has received an injury must be sufficient to give reasonable information to the employer of the nature of the injury.

5. Master and Servant—Workmen's Compensation Act—Written Notice of Injury—Sufficiency of.—A written notice of the injury must be sufficient to apprise the employer in a general way of the nature of the injury.

6. Master and Servant—Workmen's Compensation Act—Notice of Injury—What Will Excuse.—The failure to give notice may be excused by "mistake or other reasonable cause," and whether the mistake or other reasonable cause will excuse the failure to give notice is a question to be determined by the facts of the particular case.

7. Master and Servant—Workmen's Compensation Act—Notice of Injury "As Soon As Practicable."—The words "as soon as practicable" should be given a liberal construction so as not to defeat without just cause the compensation to which a meritorious claimant is entitled.

8. Master and Servant—Workmen's Compensation Act—Failure to Give Notice—What Will Excuse.—Where the employer is not prejudiced by the failure to give notice as soon as it might have been given and the failure to give it earlier was occasioned by

an honest mistake on the part of the employe his claim should not be rejected on account of the delay in giving notice.

FRED FORCHT and STANLEY REED for appellants.

CHARLES H. MORRIS, Attorney General, D. M. HOWERTON, Assistant Attorney General, A. D. COLE and LAWRENCE S. LEOPOLD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

This case, under the Workmen's Compensation Act, is brought here by the employer, Bates & Rogers Construction Company, from the Mason circuit court, to which an appeal was prosecuted from the decision of the Workmen's Compensation Board by the appellee, Henry Allen, who had been denied compensation by the board.

There is no dispute about the facts, which are substantially as follows: Henry Allen was in the employ of the appellant, Bates & Rogers Construction Company, at lock and dam No. 33, on the Ohio river, near Maysville, Kentucky, during the month of November, 1916. He went from Louisville, Kentucky, where he obtained the employment through the agency of the State Free Employment Office, to Maysville, and about four days after he commenced work for the construction company he received the injury for which he claimed compensation.

He testified before the board, on the hearing of his claim, that the injury happened in this manner: "Well, I was tearing up the dinky track, the one the little engine hauls on, hauls the cars, and working on a kind of trestle; the men would take up the rail and carry it back, and where the angle iron holds them together they wouldn't come apart, there was a big heavy fellow called Cobb, and he was hitting on these pieces of iron that held the rail together with a sledge to loosen them so I could get them apart, and something flew up and hit me in the eye, and that's the way I got hurt."

Asked as to who he told about it and what occurred afterwards, he testified as follows: "A. At that time there was several men knew I got hit in the eye with something. I told the boss I got hit. Q. Who was the boss? A. Little short fellow they called Tom—wore a straight hat like a cow boy. Q. Do you know what his last name

was? A. No, sir; Tom is all I know. I was not there long enough to get acquainted. I was only there a little over a week. Q. Was Tom the man in charge of you? A. Yes, sir. Q. Representing Bates & Rogers Construction Company? A. He was their foreman. Q. How long did you continue to work after you received this blow in the eye? A. Well, I worked—that was in the morning—and I worked out that day and I worked the next day and the next morning I left; came back to Louisville. Q. The day after you were hurt did your eye show any evidence of being hurt? A. Well, it pained me all the time. When it was first hurt I just thought something was in there and would work out and quit hurting right away; I didn't have any idea it would terminate the way it did, but then it would feel all right for a while and commence hurting again and kept on until it got inflamed so I couldn't sleep. Q. Did you tell the foreman anything about it afterwards? A. Well, the foreman knew about it; knew when I got hurt; knew the last day I worked. Q. How did he know that? A. Well, I told him when I first got hit I was hit in the eye with something. Q. After you came to Louisville what did you do? A. Well, I came home and after I went and came home I couldn't work and I went to the city hospital. Q. How long were you in the hospital? A. I judge about eleven days. I went in on Monday and came out the following Sunday week. Q. Mr. Allen, what was the condition of your eye before you were struck with whatever substance struck you? A. I had good eyesight. Q. How is your sight in the injured eye since that blow? A. Well, I haven't got any sight at all. I can close this eye and tell light, that's all I can see. I can't see anything. Q. Do you know whether that condition was brought about by this blow in your eye? A. Well, I never had anything the matter with my eye in my life until I got hit with that piece, whatever it was, never had any diseases in my eyes or anything or any complaint. Q. Now, after you were released from the hospital, what attempt, if any, did you make to notify Bates & Rogers Construction Company of your injury? A. Well, I wrote them, the best of my memory, about three letters. Q. And when was the first one that you wrote? A. Well, it was before Christmas, and then I wrote one around Christmas, and then I wrote another letter I think a couple of weeks after Christmas and it came back. I wrote to the wrong place. I

had it Mayfield instead of Maysville, and then I went to Bob Lucas and he wrote a letter and kept a couple of letters for me. Q. There is an envelope; read how that is addressed. A. Well, that is Mayfield, Ky.; that's the way I wrote. Q. That is a stamped envelope? A. Yes, sir. Q. It has across the face the figure of a hand. 'Returned to the writer unclaimed.' Will you file that as part of your deposition? A. Yes, sir. 'Law Offices Robt. H. Lucas, 316-317 Louisville Trust Building, Louisville, Ky., January 30th, 1917. Bates & Rogers Construction, Mayfield, Ky. Gentlemen: I have been employed by Mr. Henry Allen, of this city, to represent him in a claim against you growing out of an injury which he received while in your employ on lock and dam No. 33 on or about November 1st, 1916. While engaged in his work he was struck in the eye with a piece of steel which caused him to lose the sight of his eye. Dr. Wolfe, in the Atherton Building, this city, has been attending him. Kindly investigate this matter and inform us whether or not we may expect a settlement and oblige, Yours very truly (Signed) Robert H. Lucas.' Q. What time in the morning was it you got hurt? A. Must have been around ten o'clock, nine or ten o'clock. Q. And you continued to work all that day? A. Until three that evening. Q. And went to work the next morning? A. Yes, sir, and worked until three the next evening. Q. How many doctors did Bates & Rogers Construction Co. have at their camp? A. If they had any I never saw them. Q. Did you ask for a doctor? A. I never heard anybody say anything about any doctor; I never heard of any doctors. Q. Did you ask any of the bosses for a doctor or for any medicine for your eye? A. No, sir; I asked one fellow where there was a hospital, and he said they had a place at Maysville where they taken men who was sick and hurt. Q. You say there was a man named Tom there who was your boss? A. Yes, sir, Tom. Q. Did he pay you off? A. I don't know—they called it a job and jump job—you can get your money any time. Q. Did you go to the office to get your pay? A. No, sir; you had to go to the commissary. Q. You did that, did you? A. Yes, sir. Q. Did you say anything to the commissary about getting hurt; about quitting because you were hurt? A. No, sir. Q. Or the man at the office? A. No, sir. Q. Did you tell the man at the commissary or the man where you got your money why you were

quitting? A. No, sir. Never told anybody but the fore-
man. Q. That is this man 'Tom;' you don't know his last
name? A. No, sir, that's all I know him by—Tom.
. . . Q. When you read that notice you knew you
were working under the Workmen's Compensation Act?
A. I knew I was working under the compensation all the
time; I knew that. Q. You say you wrote three letters
to Bates & Rogers at Mayfield, Ky.? A. Yes, sir. Q. How
did you happen to write it Mayfield when you knew
their plant was located at Maysville? A. I was taking
Mayfield for Maysville all the time, that's the way I made
the mistake; I thought it was Mayfield instead of Mays-
ville. Q. What did you say in your letters to the Bates
& Rogers Construction Co? A. Well, that has been a
long time; I don't know whether I can think exactly
or not what I wrote now. I don't hardly think I could.
Q. Well about what you said? A. Well, I know this, I
told them I was hurt there by being hit there with some-
thing in the eye and I lost my sight out of one eye, and
I know I asked them if they couldn't help me a little.
Q. Was that the tenor of what you said in all three of
the letters? A. Yes, sir, just about the same. Q. Were
these letters returned to you? A. Yes, sir. Q. What be-
came of them? A. Well, in fact I never paid any mind to
them; I couldn't say. Q. When did you first find out
that you had made a mistake between Mayfield and
Maysville? A. Well, I never found that out until I was talk-
ing to Mr. Leopold. Q. Did Mr. Lucas tell you? A. No,
Mr. Lucas never did know. Mr. Lucas didn't know; he
thought it was the same I did."

John Reed, who was a laborer with Allen, testified
as follows: "Q. Were you up there with Henry Allen,
the plaintiff in this case? A. I worked with him there,
yes, sir. Q. Were you housed in the same bunk house
with Henry Allen? A. Yes, sir. Q. Did you have oc-
casion to observe him before the time he complained of
an accident? A. Yes. Q. What was the apparent con-
dition of his eye, his left eye, at that time? A. I didn't
see anything wrong with it. Q. Was there any evidence
of redness or inflammation? A. No. Q. Or being blood-
shot or anything? A. No. Q. When was the first time
you saw anything the matter with his eye—his left eye?
A. Well, it was one evening that after our shift was
out he complained of his eye, and same night he was
up and complained with it. Q. You didn't see the acci-

dent? A. No. I didn't see it. Q. Well, now, did this eye apparently give him much or little trouble when you first saw it? A. Well, he complained of it—I couldn't say as to what pain he suffered or what seriousness happened to his eye, but he complained of it, that's all I know. Q. Do you know whether he was able to sleep that night or did he? A. Well, he was up at one time, on one night there in the shanty we stayed in. I don't know what pain he suffered with his eye. It seemed to be inflamed. Q. Do you remember why he was not sleeping? A. Well, he complained of his eye is what he told me. Q. Said his eye hurt so he was unable to sleep—is that what he said? A. Yes, said his eye hurt."

Dr. C. T. Wolfe, who was a member of the medical staff of the Louisville City Hospital, testified that Allen was admitted to the hospital in the latter part of November on account of an injury to his eye that had the appearance of having been made by a foreign body or a blow; that Allen told him that the injury to his eye was caused by a piece of metal that flew from a sledge or a piece of iron that was being struck with it by a co-laborer; that the eyesight was practically destroyed by the injury.

He further testified as follows: "Q. What was the condition of the eyeball? A. He had a lacerated wound, if I remember rightly, near the outer edge of what we call the cornea—that is the clear part of the eye. The tissues were torn and lacerated and it looked as though—I am sure something did strike him in the eye. Q. Did the symptoms you found correspond with the history of the case as given to you? A. Well, the history that he gave me was— Do you want me to tell you what he told me? Q. Yes. A. Told me he was working with metal and that he or one of his fellow workmen were using a sledge and his opinion a piece of the metal flew up as a result of the blow of the sledge and struck him in the eye. That's all I asked him—didn't care to know any more about it. Q. What is the present vision of the eye, do you know? A. He has perception to light—reduced merely to telling when the electric light is on. Q. Do you think unquestionably this cataract of this particular man is due to that injury? A. He had a lacerated wound and in what we call the danger zone and it was of such character as made me believe that the cataract, formation of the

cataract, was directly due to the blow.  Q. That is your opinion now?  A. That is my opinion, yes, sir.''

This was all the evidence heard by the Compensation Board, and it made the following findings of fact: ''1. The alleged accident to the plaintiff is proven to have occurred on the 18th or 19th of November, 1916, and the first notice of accident and injury which defendant received was mailed March 5th, 1917.  This notice was not given as soon as practicable and was not a compliance with section 33.  2. The plaintiff failed to show the alleged 'Tom' to be an agent or representative of defendant. 3. The plaintiff failed to show that 'Tom' or the defendant had knowledge of the alleged injury.  4. Plaintiff's failure or delay in giving proper notice was not occasioned by mistake or other reasonable cause.  5. When plaintiff was alleged to have written his letters was too late under the circumstances to give the notice under the act.  On these findings of fact the board found as a matter of law that Allen was not entitled to compensation and dismissed his claim.

As the case turns on the sufficiency of the notice to the employer of the injury it will be necessary to refer to pertinent sections of the Workmen's Compensation Law. It is provided in section 4914 of volume 3, Kentucky Statutes, that ''No proceedings under this act for compensation for an injury or death shall be maintained unless a notice of the accident shall have been given to the employer as soon as practicable after the happening thereof and unless a claim for compensation with respect to such injury shall have been made within one year after the date of the accident.''

Section 4915 provides that ''Such notice and such claim shall be in writing, and the notice shall contain the name and address of the employe and shall state in ordinary language the time, place of occurrence, nature and cause of the accident, with names of witnesses, the nature and extent of the injury sustained and the work or employment in which the employe was at the time engaged.''

And in section 4917 it is provided that ''Such notice shall not be held invalid or insufficient by reason of any inaccuracy in complying with section 4915 hereof unless it be shown that the employer was in fact misled to his injury thereby.  Want of notice or delay in giving notice shall not be a bar to proceedings under this act if it be

shown that the employer, his agent or representative had knowledge of the injury or that such delay or failure to give notice was occasioned by mistake or other reasonable cause.''

In section 4935 provision is made for a review of the findings of the Compensation Board by an appeal to the circuit court, but this power of review is limited to determining whether or not: ''1. The board acted without or in excess of its powers. 2. The order, decision or award was procured by fraud. 3. The order, decision or award is not in conformity to the provisions of this act. 4. If findings of fact are in issue, whether such findings of fact support the order, decision or award.''

At the very outset we are met with the contention of counsel for Bates & Rogers Construction Company that the findings of the Workmen's Compensation Board on the questions of fact are supported by sufficient evidence to sustain them, and of course if this contention is sound we are not at liberty to go back of the findings of fact made by the board for the purpose of determining their correctness. It would further necessarily follow from this that the ruling of the board that Allen was not entitled to compensation should be sustained because in its findings of fact the board held that the evidence did not show that ''Tom'' was the representative of the Bates & Rogers Construction Company, and besides did not have the ''knowledge of the injury'' required by the statute and that the delay of Allen in giving the statutory notice was not occasioned by ''mistake or other reasonable cause.''

We think, however, counsel misconceives the effect of the findings of fact made by the Compensation Board. The rule relied on by counsel as to the effect of the findings of fact by the board only applies when there is a disputed issue of fact and on the disputed facts the board makes a finding. If there is no issue of fact or if the facts are undisputed the question on the facts becomes one of law and the finding of the board is a finding of law and not of fact, although it may be styled a finding of fact by the board.

It is a familiar principle in our practice that when in the trial of a common law case before a jury there is no dispute as to the facts the question for decision is one of law to be made by the court and not by the jury, and we think the same rule should be applied in compen-

sation cases.   Hochspeier v. Industrial Board, 278 Ill. 523, L. R. A. (1918 F. 227).

The question, therefore, being one of law and not of fact we do not find in the Compensation Act anything that precludes us from inquiring into the correctness of a finding of law made by the board.   We think the right of the court to review it is authorized by that clause in section 4935 of the statute giving to the court authority to determine whether or not " (3) the order, decision or award is not in conformity with the provisions of this act."   If Allen, on the undisputed facts, was entitled to compensation then the decision of the board was not in conformity with the provisions of the act, and so if the board where there is no dispute as to the facts should allow compensation the court could review its finding of law.

On the record it is conceded that there are only two questions in the case that need to be considered.   One is whether the Bates & Rogers Construction Company had knowledge of the injury, and the other, if it did not, whether the failure or delay in giving the notice required by the statute was occasioned by "mistake or other reasonable cause."

The statute, in section 4914, provides, as we have seen, that "no proceeding under this act for compensation for an injury or death shall be maintained unless a notice of the accident shall have been given to the employer as soon as practicable after the happening thereof."   It further provides, in section 4915, that "such claim shall be in writing."   And it is contended upon the one side that the notice required by these provisions of the statute was not given, while on the other it is insisted that the rights of Allen were saved by section 4917 providing in part that "want of notice or delay in giving notice shall not be a bar to proceedings under this act if it be shown that the employer, his agent or representative had knowledge of the injury."

It being conceded that the employer, Bates & Rogers Construction Company, did not have personal knowledge of the injury, the first question we may take up is —did its agent or representative have knowledge of the injury?

We think the evidence is sufficient to show that "Tom" was, within the meaning of the statute, the agent

or representative of the Bates & Rogers Construction Company, there being no contradiction upon this point of the evidence of Allen, who says that "Tom" was the man in charge of him, representing the Bates & Rogers Construction Company as their foreman, and a "foreman" or "boss" in charge of a crew or gang of men is an agent or representative of the employer and his knowledge of the injury has the same effect as if the employer in person had knowledge of it. Fell's Case, 226 Mass. 380; Re Simmons — Me. (1918), 103 Atl. 68; Hornbrook-Price Co. v. Stewart — Ind. App. (1918), 118 N. E 315; Joliet Motor Co. v. Industrial Board, 280 Ill. 148; R. F. Conway Co. v. Industrial Board, 282 Ill. 313; State Ex Rel. v. Pennington County, 132 Minn. 251; In Re Bloom, 222 Mass. 434; Pellett v. Industrial Commission, 162 Wis. 596, 156 N. W. 956; Parker Washington Co. v. Industrial Board, 274 Ill. 498, 113 N. E. 976; In Re Murphy and In Re American Mutual Liability Ins. Co., 226 Mass. 60, 115 N. E. 40.

But we do not think that "Tom," the foreman, had the "knowledge of the injury" that is required by the statute. According to the evidence of Allen he merely told the boss, who was present at the time of the accident, that "I got hit." "Well, I told him when I first got hit, I was hit in the eye with something." Knowledge by the foreman or employer that an accident has happened or knowledge that an employe has been hit with something as a result of the accident is not "knowledge of the injury." An employe might meet with an accident—he might get hit with something and the employer or his agent or representative might have actual knowledge of the fact that an accident had happened and that an employe got hit with something as a result thereof, but this would not convey to him the knowledge of the injury contemplated by the statute.

The purpose of the statute was that knowledge of the injury by the employer or his agent or representative should dispense with the necessity for giving the written notice required when the employer or his agent or representative did not have personal knowledge of the injury. If the written notice is given the statute provides that it shall state the "nature and extent of the injury sustained," although this does not mean that the full or exact nature or extent of the injury shall be brought to the knowledge of the employer, his agent or representa-

tive, but only that he should have such knowledge of its nature and extent as would enable him to take such steps as might be deemed prudent or advisable to provide the necessary medical or other attention that the nature or extent of the injury seemed to demand. We say this because it is provided in section 4917 that the written notice shall not be held invalid or insufficient by reason of any inaccuracy unless it be shown that the employer was in fact misled to his injury thereby.

We therefore think that the actual notice that may take the place of a written notice should be sufficient to convey to the employer the same knowledge of the injury that would be required if a written notice was given. Looking at the matter from this standpoint our opinion is that mere knowledge on the part of the employer that his employe has been hit with something or that an accident of some kind has happened is not "knowledge of the injury," within the meaning of the law. An employe might get hit and not sustain any injury or he might get hit and sustain an injury so trifling as that no medical or other attention would be needed or he might get hit and receive such an injury as that attention and treatment would be required. The notice is intended for the protection of the employer as well as the benefit of the employe, and it must be of such fullness and sufficiency as to apprise the employer of its nature and extent so that he may, for his own protection, as well as the benefit of the employe, do whatever seems necessary under the circumstances to save himself as well as he can from further loss or cost on account of the injury.

In Bushnell v. Industrial Board of Illinois, 276 Ill. 262, it appears from the opinion that "An employe was engaged in tearing up a floor. He was using a pick, one end of which he struck under the floor, and the floor was raised and torn up by placing his foot on the other end of the pick and giving the handle a pull. In some manner the pick slipped and he twisted his leg, sustaining an injury. The injury was apparently slight at first. No formal notice of the accident was given. Two conversations with the foreman were relied upon as dispensing with formal notice. On the following day the foreman noticed the employe limping and asked as to what was the matter. The employe replied that he had hurt his leg in tearing up the floor. Some days later the foreman again noticed that the employe was limping and

again asked him as to what was the trouble. On this occasion the employe stated that he had a 'game leg.' It was not claimed that in either of the conversations it was intimated that the injury was serious, or that the foreman had any knowledge of the facts or circumstances of such injury other than that obtained from these conversations," and the court said: "We think it is both the spirit and intention of the act that the employer shall have notice, either by formal notice or knowledge of such facts and circumstances of the accident as will apprise him that his employe has sustained injuries of such a character as to entitle him to compensation under the act, and that he may reasonably expect that such claim will be made . . . The mere fact that Stewart (the injured employe) told the foreman, in response to the question as to what caused him to limp, that he had wrenched his leg in attempting to tear up the floor, without making any claim for compensation for such injury or suffering any interruption of his work, was not sufficient notice of the facts and circumstances of the accident to entitle him to compensation under the provisions of section 24 of that act without the giving of any other notice."

The remaining question is—did Allen give to his employer notice of the accident and injury within the time and manner required by the statute, or if not, was his delay or failure to give the notice occasioned by mistake or other reasonable cause?

It will be observed that the statute, in section 4914, provides that "No proceeding under this act for compensation for an injury or death shall be maintained unless a notice of the accident shall have been given to the employer as soon as practicable after the happening thereof." And limits the time in which the notice may be given to one year after the date of the accident. And in section 4915 there is specified what the notice shall contain; and further it is provided, in section 4917, that the notice shall not be invalid or insufficient because of a falure to describe as required by section 4915 the time, place, nature and cause of the accident and the nature and extent of the injury unless it be shown "that the employer was in fact misled to his injury thereby;" and further provided that the giving of the notice will be excused if the delay or failure to give it was "occasioned by mistake or other reasonable cause."

Looking now to the facts, it is not contended that the letters written by Allen or the letter written by Robert H. Lucas did not sufficiently comply with the statutory requirement as to written notice, but insisted, first, that Allen did not give the notice "as soon as practicable" after the injury, and second, that his conduct in addressing the letters to Mayfield, Kentucky, in place of Maysville, Kentucky, was not "occasioned by mistake or other reasonable cause."

Allen received the injury for which he asked compensation in the latter part of November, 1916, and his first letter informing his employer of the accident and injury was written before Christmas, 1916, the second about Christmas and the third a few weeks after Christmas, while the letter of Lucas was written on January 30, 1917. Not receiving any answer to either of these letters, because they had been sent to the wrong address, Allen placed the matter in the hands of Mr. Leopold, who gave the Bates & Rogers Construction Company, on March 5, 1917, a sufficient notice, and in June, 1917, the matter was heard and disposed of by the board.

Allen, of course, knew the nature of his injury a few days after it was received and how it happened, and was fully advised of the extent of it when he left the hospital in December; and within a few days after leaving the hospital he attempted to give to his employer the notice required by the statute, but in place of sending this notice to Maysville, where his employer was located, he sent it to Mayfield. That Allen did attempt, in good faith, to give the notice was clearly established by the undisputed facts. Upon failing to receive an answer to his first letter he sent another and not getting an answer to this note yet another, to which he received no answer, and he put the matter in the hands of his attorney, Lucas, who also attempted in good faith to give the notice.

The words "as soon as practicable" should be given a liberal construction so as not to defeat, without just cause, the compensation to which a meritorious claimant is entitled, and when a claimant, acting in good faith, attempts to give the notice very shortly after he learns the nature and extent of his injury and within the year, he should not be denied compensation unless it appears that the employer "was in fact misled to his injury" by the failure to receive earlier notice, and there is no fact or

circumstance in this record conducing to show that the delay in giving the notice prejudiced in any manner the rights of the Bates & Rogers Construction Company.

Where a notice is not given "as soon as practicable," but the failure to give it "as soon as practicable" is caused by "mistake or other reasonable cause," this excuses the failure to give notice "as soon as practicable," and therefore in considering the question whether a notice was given "as soon as practicable," and an excuse is offered for this failure, it becomes important to inquire into the sufficiency of the excuse so that it may be determined whether or not the failure to give the notice "as soon as practicable" was occasioned by "mistake or other reasonable cause," and also whether the employer was prejudiced by the delay.

Where the employer is not prejudiced by the failure to give the notice at as early a date as it might have been or should have been given and where the failure to give it sooner was occasioned by an honest mistake on the part of the employe we do not think a fair consideration of the statute warrants the rejection of the employe's claim for compensation solely on account of the delay in giving notice. It is only important that the employer should have notice of the injury as soon as practicable in order that he may have opportunity to investigate the cause of the injury as well as the nature and extent of it and take such action as he may think advisable to protect his interest, and if it was made to appear that the employer's rights were prejudiced by the failure to give the notice at an earlier date than it was given it would require stronger evidence to support the excuse for the failure or delay in giving it than should be required when the delay did not occasion any injury to the employer or in any manner prejudice his interest.

But in this case there is, as we have said, no suggestion that the employer was prejudiced by the delay in giving the notice or that the injury to Allen's eye was aggravated by neglect or failure to receive proper medical attention. Dr. Wolfe testifies that the injury to his eye was of such a nature that the impairment of his eyesight was brought about immediately upon its happening.

Under the circumstances of this case we are of the opinion that the delay in giving the notice sooner was caused by mistake within the meaning of the statute, and that

a fair construction of the act did not warrant the rejection by the board of Allen's claim for compensation upon the ground of his delay in giving the notice.

The right to defeat it is rested entirely upon the legal ground that notice was not given as required by the statute. And where the claim is meritorious and the employer has not been prejudiced by the delay, the want of mistake or reasonable cause that would be sufficient to excuse the giving of the notice sooner should be very convincing to authorize the rejection of the claim.

The law was primarily intended for the protection and benefit of employes and its beneficent purpose should not be defeated by a strict or technical construction that would deprive the employe of the compensation to which he would clearly be entitled without contest if he had prosecuted his claim with diligence.

Illustrative cases on the disposition of the court to support this view are: Donahue v. Sherman Sons Co., 39 R. I. 373, 98 Atl. Rep. 109; Schmidt v. O. K. Baking Co., 90 Conn. 217; Pellett v. Industrial Commission, 162 Wis. 596; Frankfort General Insurance Co. v. Milwaukee, 164 Wis. 77, 159 N. W. 581; Bloom's Case, 222 Mass. 434; Knoll v. Salina, 98 Kan. 428; A. Breslauer Co. v. Industrial Commission, 167 Wis. 202, 167 N. W. 256; Smith v. Solvay Process Co., 100 Kan. 40.

Wherefore, the judgment of the circuit court is affirmed.