## Consolidation Coal Co.'s Receiver v. Scott et al.

(Decided March 23, 1934.)

E. C. O'REAR and J. E. CHILDERS for appellant.

V. SCOTT WHITT for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming.

T. A. Scott was working for the Consolidation Coal Company and filed this proceeding before the Workmen's Compensation Board to recover compensation for an injury. The facts are these:

T. A. Scott, on January 8, 1931, was pulling timber out of the mine. The chain broke and the machine fell on him bruising his neck, shoulder, and arm; the injury resulting, as he claimed, in injury to the arm and paralysis of the middle, ring, and little fingers of the right hand. He had been working for the company only a few weeks. He at once reported his injury to the mine foreman and was examined by Dr. Lawson and the mine physician, Dr. Stenfield, on January 10. He laid up for a while, but on January 17, secured a certificate from Dr. Lawson that he was fit for work. He applied for work on January 18, but the foreman could not give him any work. On January 30, 1931, he filed application before the board for compensation for his injury, and on March 24, 1931, he took the depositions of himself, Dr. G. B. Irvine, and Dr. J. B. Lee, making out his claim. He was a man without means. He got some help from charity in one way and another, and thus things ran along until July 6, 1931. He got work on July 6, 1931, in West Virginia at the Red Jacket Coal Mine loading coal on cars. He worked four days, and on July 11, while riding on a tramcar to his work, had to jump off the car to prevent injury in a collision and in jumping off received an injury to his right arm. He applied for compensation for this injury before the Workmen's Compensation Board in West Virginia as the injury occurred there. He had taken out a policy of accident insurance on July 1, and he applied for compensation from the insurance company. In his application to the board, as well as in his claim against the insurance company, he set out his injuries practically in the same

words as in the application that he had filed in January against the Consolidation Coal Company. The West Virginia commission allowed him $33.14, which was paid to him. The insurance company paid him $75 in settlement of his claim. The Consolidation Coal Company relied on his making claim against the insurance company and the Red Jacket Coal Company, before the Compensation Board of Kentucky on his application for compensation for the injury received in January. Thereupon he filed a statement that his claims against those companies had by mistake been stated incorrectly; that he only claimed compensation over there for the injuries he received there and claimed that his real injury was that received in January, 1931. A large mass of proof was taken, and on final hearing the Kentucky Board, on February 8, 1933, overruling the opinion of the referee, to whom the case had been referred, entered an award in his favor against the Consolidation Coal Company in the sum of $5.37 a week for 335 weeks, with interest at the rate of 6 per cent. on all past-due installments and $100 for physicians' fees and hospital expenses. The Consolidation Coal Company's receiver appeals.

In Lawrence Leather Co. v. Barnhill, 249 Ky. 443, 61 S. W. (2d) 1, 4, .the court thus stated the rule as to when the board's finding is reviewable by the courts:

"There being some evidence warranting the finding of the board, it is not the province of this court to review and weigh it for ourselves, although we might consider it in a different light and reach a different finding of fact. The rule is, 'if there was substantial, credible evidence supporting the findings of the board, the courts cannot interfere.' It is only where there is no contrariety of evidence or disputed facts on which the board's finding is based that finding is reviewable by the courts. Bates & Rogers Construction Co. v. Allen, 183 Ky. 815, 210 S. W. 467."

The evidence is uncontradicted that Scott was a healthy man up to his injury on January 8, 1931. The fact that on that day he went at once to the mine superintendent and the company's physician and was examined by the latter and his testimony as to Scott's condition then confirms Scott's testimony as to what occurred. The examination of Dr. Irvine and Dr. Lee on March 24, 1931, according to their testimony, disclosed

the condition which Scott now testifies to, and after the testimony of other physicians had been taken in the case by the coal company, they were recalled and testified as before as to his condition at that time.

It is earnestly insisted that Scott's testimony is contradicted in many respects and is simply incredible. But his testimony is confirmed by the above physicians; his statement in his application for compensation in West Virginia and in his claim against the insurance company, he testified, were written out by the agents and that he signed them without really understanding them. But, however this may be, under the rule above quoted the truthfulness of the witnesses is for the board. Where there is substantial credible testimony in favor of the injured servant and the board makes an award in his favor, the award of the board cannot be disturbed on the facts. There is clearly here substantial credible evidence supporting the finding of the board.

The fact as shown by the proof is that Scott was in a pitiful condition, without means of substance and without work. In his extremity he tried to work by tying his right hand to the shovel, so he could work with the shovel and throw coal on the car. He did not do full work, but was simply doing the best he could. He was an ignorant man hoping that his hand would get better; but the fact is it did not get better. The judgment of the full board cannot be disturbed on the evidence. There was some substantial evidence that the real injury from which he was suffering was that received in January, 1931.

Judgment affirmed.