# Blue Bird Mining Co. et al. v. Litteral.

February 23, 1951.

W. R. Prather, Judge.

**710**

M. B. Fields for appellant.

C. C. Wells for appellee.

JUDGE SIMS—Affirming.

This appeal involves the construction of KRS 342.-200 concerning notice by an injured employee to his employer as a condition precedent to asserting a claim under the Workmen's Compensation Act. The referee in a rather elaborate opinion held the employer did not have "due and timely notice of the accident and injury," and denied compensation. On a review by the full Board the findings of the referee were sustained. On an appeal to the Knott Circuit Court the chancellor found that as the accident happened in the presence of a foreman and as the injured employee was treated by the company's camp physician, the statute did not require appellee to give notice of the accident and his resultant injuries, and remanded the case to the Board to determine the extent and duration of disability and to fix an award to which appellee is entitled.

There is no conflict in the testimony as to the accident and injury occurring in the presence of appellant's foreman (if he was a foreman), or as to appellee being treated by the company's camp physician a few days after the, accident, therefore, the findings of fact by the Board that the company did not have notice of the accident and injuries in reality is a finding of law which may be reviewed by the courts. Bates & Rogers Const. Co. v. Allen, 183 Ky. 815, 210 S.W. 467; Chatfield v. Jellico Coal Mining Co., 205 Ky. 415, 265 S.W. 943; Diamond Block Coal Co. v. Sparks, 209 Ky. 73, 272 S.W. 31.

On the afternoon of Oct. 7, 1948, while loading coal from a chute, Litteral was struck on the head by a lump of coal "about the size of your fist," which jumped over a protective screen when a load of coal was dumped into the chute. He was wearing a helmet but the coal fell from a height of over twenty feet and knocked the helmet from his head. Litteral was asked by Sam Mc-

Intosh, who was in charge of the crew, if he was hurt, and he made this reply, "No more than just about knocked my brains out."

McIntosh then asked appellee if he wanted a doctor, but the latter declined saying the doctor was never in camp when an accident happened. Litteral finished his shift but the next morning found a bloody discharge from his right ear and went to the office of J. R. Aker, the company's camp physician, for treatment. The doctor was not in but appellee did see Dr. Aker Sunday morning following the accident on Thursday, and received from him some headache tablets. Some three weeks later appellee started losing his hearing and now is probably deaf in one ear, with partial impairment of the other.

In April 1949, Dr. Aker sent appellee to Dr. C. L. Combs, an ear, eye, nose and throat specialist. Upon receiving information from appellee of the lick on his head the preceeding October, Dr. Combs had X-rays made and the doctor testified they revealed no evidence of a fracture. He was unable to do anything medically for the patient and advised him to wear a hearing aid. However, Dr. J. Campbell Thompson, of Lexington, who specializes in roentgenology made five X-rays on Sept. 22, 1949, and found "an old incompletely healed fracture of the left temporal and occipital bone." Dr. D. V. Sublett, an ear, eye, nose and throat specialist of Lexington, saw the X-rays made by Dr. Thompson and he examined appellee on Sept. 22, 1949, and attributed his deafness to an old fracture but could not say when the trauma occurred.

McIntosh testified, "I was the gang leader. * * * I taken the car numbers and stuff like that. * * * I had to know what kind of cars and what kind of preparations were in these cars and the kind we loaded. * * * I had no authority over the tipple. * * * Well, I guess I was the head man. I went ahead, that's right, they followed me." When asked, "They followed your directions"? He answered, "Well, they went along. We all worked together."

Appellant argues that McIntosh could not be a foreman because he belonged to the union. It may be that union rules and those of industry forbid a union mem-

ber to become a general foreman. But certainly, a union man could be the foreman of a small crew like the one in which Litteral was working at the time of his injury. Webster's New International Dictionary, second edition, defines "foreman" as "a leader; one in front; the chief workman in a crew; the person in authority over a group of workmen." Applying this definition to the testimony of McIntosh, we have no difficulty in finding that he was appellee's foreman and the representative of the company on the occasion and at the time of this accident.

It is provided in KRS 342.200, "Want of notice or delay in giving notice shall not be a bar to proceedings under this chapter if it is shown that the employer, his agent or representative had knowledge of the injury or that the delay or failure to give notice was occasioned by mistake or other reasonable cause." Appellant argues if it should be held that McIntosh was the foreman over this crew, his knowledge of the accident was not knowledge of the injury, since an injury to appellee would not necessarily follow such an accident as he sustained, citing, Bates & Rogers Const. Co. v. Allen, 183 Ky. 815, 210 S.W. 467, 472. But we have written that notice of a physical injury carries with it notice of all those things which reasonably may be anticipated to result from it. Bates & Rogers Const. Co. v. Emmons, 205 Ky. 21, 265 S.W. 447; Dawkins Lumber Co. v. Hale, 221 Ky. 755, 299 S.W. 991. It is common knowledge that a severe lick on the head may be followed by serious injury, therefore we hold that when the foreman knew of Litteral being hit on the head with a lump of coal, he had notice of his injury.

In addition to McIntosh knowing of the accident, appellee visited the camp physician on Sunday following the injury on Thursday. Appellee testified he went several times to see the company's manager, but could not get to see him, and he wrote the manager a letter in June 1949. In the circumstances presented by this record, we hold as a matter of law there was no want of timely notice to the company of the accident and the resultant injury to appellee.

Appellant puts much reliance on the Allen case, 183 Ky. 815, 210 S.W. 467, and Northeast Coal Co. v. Castle, 202 Ky. 505, 260 S.W. 336. The Hale opinion,

221 Ky. 755, 299 S.W. 991, in discussing the Allen case on the question of want of notice said that if one looks at what was decided in the Allen opinion and not at what was said there, it would be found the Allen opinion supported Hale's contention that notice to the employer of the injury is not necessary where a representative of the employer had knowledge the employee had suffered a serious accident.

The Castle opinion, 202 Ky. 505, 260 S.W. 336, is easily distinguished from the instant case. There, the injured workman sent word of his injury to his employer by his brother, who never delivered the message. The injured workman did not exhibit enough interest to inquire of his brother if his message had been delivered. Then too, his injury, if any, was of such a nature that a prompt medical examination would have disclosed whether his condition was the result of a pre-existing disease or of traumatic injury. Hence, the failure to give notice was necessarily prejudicial to the employer.

The judgment is affirmed