GOOD IMPRESSIONS, INC.
and
National Surety Corp., Plaintiffs,

v.

Theodore BRITTON, Defendant.

Civ. A. No. 921-58.

United States District Court
District of Columbia.

Oct. 22, 1958.

Bernard J. Gallagher, J. Roy Thompson, Jr., Washington, D. C., for plaintiffs.

Oliver Gasch U. S. Atty., E. Riley Casey, E. P. Troxell, John F. Doyle, Asst. U. S. Attys., Ward E. Boote, Herbert P. Miller, James Edward Hughes,

Dept. of Labor, Washington, D. C., for defendant.

TAMM, District Judge.

On March 18, 1958, the defendant, acting under the Longshoremen's and Harbor Workers' Compensation Act as made applicable to the District of Columbia, made an award which allowed the claim of one Frank C. Duell. The plaintiffs, the employer of Frank C. Duell and the employer's insurance carrier, have filed suit in this court pursuant to Sec. 21 of the Longshoremen's and Harbor Workers' Compensation Act (Title 33 U. S.C.A. § 921) as made applicable to the District of Columbia by Title 36 D.C.C. § 501 (1951) to have this compensation award set aside. Subsequent to the filing and serving of the complaint, both the plaintiffs and the defendant filed motions for summary judgment. On October 8, 1958, counsel for all parties came before this Court and argued in support of their respective contentions.

The plaintiffs and the defendant presented various points to this Court upon which they based their motions for summary judgment. This Court feels that only one of these points need be discussed as a determination of that point will be dispositive of the case.

The illness upon which Mr. Duell filed and based his claim occurred as follows: After reporting for work on January 31, 1956, Mr. Duell began to suffer from a headache, and later he felt nauseated. Around lunch time he lay down for about one/half hour. He did not feel well throughout the afternoon and left work around 5 p. m. Enroute home he stopped at Dr. Sarao's office where he was treated for an earache. Upon his arrival at home he lay down for he was still feeling ill. He ate nothing but toast and tea, and finally about 9:30 p. m. he went upstairs to retire for the night. As he ascended the stairs, a pain struck him across the chest. He made his way into the bathroom where he fell to the floor. His wife finally contacted a Dr. Ottman who arrived on the scene about 11:30 p. m., and he immediately sent the claimant to Washington Sanitarium. The next morning, Mrs. Duell telephoned her husband's employer and told one of the workers, in substance, that her husband was ill—that the doctor said he had had a heart attack and that he was in the hospital.

At the time of his entry into the hospital, it was determined by Dr. Hare that the claimant was suffering a myocardial weakness with sinus arrhythmia, with evidence of changes in the musculature. After remaining in the hospital for four days, the patient was allowed to return home, but upon his arrival another heart episode occurred, and he was immediately returned to the hospital. Dr. Hare testified that after Mr. Duell's readmission, "there had been extensive change, and my interpretation was that he was suffering from an acute anterior infarct or occlusion." (Tr. p. 84) Dr. Bailey testified that his diagnosis at the time of readmission was coronary arteriosclerosis with old anteroseptal myocardial infarction. The record also shows that the claimant suffered heart failure on March 12, 1957, in addition to the episodes referred to above. Dr. Bernard Walsh, who testified on behalf of the plaintiffs (respondents at the Board hearing), did not examine the claimant until March 18, 1957.

No other notice of Duell's illness was given the employer until the claimant filed a formal claim for compensation in late January, 1957. During at least a part of the period from January 31, 1956 to January, 1957, the claimant received "non-occupational sick benefit" through his employer.

The plaintiffs contend that they did not receive timely notice of the claim asserted. Title 33 U.S.C.A. § 912 deals with the subject of notice in cases of this type and reads as follows:

"(a) Notice of an injury or death in respect of which compensation is payable under this chapter shall be given within thirty days after the date of such injury or death (1) to the deputy commissioner in the compensation district in which such in-

jury occurred and (2) to the employer.

\* \* \* \* \* \*

"(d) Failure to give such notice shall not bar any claim under this chapter (1) if the employer (or his agent in charge of the business in the place where the injury occurred) or the carrier had knowledge of the injury or death and the deputy commissioner determines that the employer or carrier has not been prejudiced by failure to give such notice, or (2) if the deputy commissioner excuses such failure on the ground that for some satisfactory reason such notice could not be given; nor unless objection to such failure is raised before the deputy commissioner at the first hearing of a claim for compensation in respect of such injury or death."

The findings of the commissioner relative to notice are as follows:

"That written notice of the claimant's illness was not given to the deputy commissioner and the employer within thirty days, but that the claimant's wife notified the employer of the claimant's illness by telephone on February 1, 1956, and the employer, having such knowledge, was not prejudiced by the lack of such written notice."

The plaintiffs concede that the plaintiff-employer had knowledge of the claimant's illness, but argue that it was not sufficient knowledge "which reasonably would have put the employer on notice that the injury would be or was claimed to have been the result of employment." Plaintiffs also contend that they were prejudiced in this matter of notice.

The defendant alleges that the plaintiffs do not now have the right to assert anything either with respect (a) to written notice, or (b) to knowledge, or (c) to prejudice because they did not raise such issues before the deputy commissioner and thus cannot raise them now before this Court. However, as the plaintiffs point out, the issue of notice

was raised (Govt.Ex. 1, Tr. p. 4), and the deputy commissioner made findings with respect to notice, knowledge and prejudice. Also, the transcript shows that inquiry was made at the hearing before the Bureau of Employees' Compensation and that evidence was received relating to notice and knowledge. Finally, the case of Bethlehem Steel Co. v. Parker, D.C., 72 F.Supp. 35, affirmed at 4 Cir., 163 F.2d 334, lends support to the ability of the plaintiffs in the present case to raise these issues. In that case, a particular point relating to notice was not presented to the deputy commissioner, but the trial court treated that point as being properly before him for consideration. At page 37 of 72 F. Supp., Judge Coleman wrote as follows:

"Although, as just stated, this precise point was not presented to or argued before the Deputy Commissioner, nor, in fact, is it specifically presented in claimant's petition for review of the Deputy Commissioner's findings, nevertheless, we are of the opinion that since the question of insufficiency of the notice was raised before the Deputy Commissioner at the first (and only) hearing before him, and since the allegations in the petition for review are broad enough to embrace all phases of that question, we should treat the specific point as now properly before us for consideration."

As stated previously, the plaintiffs concede that they had knowledge of the claimant's illness, but contend that it was not "sufficient knowledge." The question for determination at this point resolves itself into this: Was the knowledge which the employer had of the claimant's illness, "knowledge" within the meaning of T. 33 U.S.C.A. § 912?

In Volume 2 of Larson's Workmen's Compensation Law, there is the following at page 254:

"As to notice of injury, however, both courts and legislatures have been inclined to ask whether either of the two purposes of the notice

statute have miscarried because of the lack of literal compliance, the two purposes being the facilitation of prompt medical attention and the provision of opportunity for immediate investigation of the circumstances of the accident.

\* \* \* \* \* \*

"The present tendency is to excuse lack of notice whenever the employer acquired actual knowledge of the accident, no matter how he acquired it. The mere witnessing of claimant's mishap or symptoms by a supervisory employee has often been held adequate notice to the employer. In the typical case, claimant suffers certain pains and symptoms, has to rest or lie down, complains to the foreman, and is taken to the first aid room and observed by a company nurse or doctor. Through the foreman or doctor or both the employer is usually held to have obtained as complete notice as the injured man could give, since he could provide no more details of the circumstances and manifestations of his injury than the others witnessed. It is not enough, however, that the employer, through his representatives be aware that claimant 'feels sick', or has a headache, or fell down, or walks with a limp. There must be in addition some knowledge of accompanying facts connecting the injury or illness with the employment, and indicating to a reasonably conscientious manager that the case might involve a potential compensation claim."

And at page 259:

"The general disposition of compensation law and its administrators to prevent forfeiture of compensation rights for lack of notice whenever any reasonable ground exists should not be allowed to create the impression that notice of injury is a hollow formality that may safely be disregarded. The requirement, as has been shown, is no mere technicality. It serves a specific function in protecting the legitimate rights of the employer and the leniency of its enforcement cannot be carried to the point where these rights of the employer are prejudiced.

"More particularly, once the record shows that the required notice has not been given, the fatal effect of this showing must be offset by definite findings showing the kind of excuse or lack of prejudice which will satisfy the statute. The commission cannot remain silent on the issue of excuse or prejudice and leave appellate courts to infer that some excuse must have been found. The burden, of course, is on the employee to prove facts establishing an excuse once a failure to comply with the statute has been shown."

In the case of Basil v. Cyr, D.C., 130 F.Supp. 642, affirmed 2 Cir., 221 F.2d 957, one of the questions for determination was whether any notice of any injury was given to the employer. The only evidence as to notice came from the plaintiff-claimant who testified as follows:

"Well, Monday morning I was supposed to go to work and my wife called John Freeman who is the head foreman. She notified him I was sick and I had to have a doctor. So there was no doctor offered, so my wife said she would have to get my own doctor, our Dr. Urban. Dr. Urban came."

This call was made two days subsequent to the alleged accident. The Court, in reference to such notice, wrote the following in 130 F.Supp. at page 642:

"The normal conclusion to be drawn from this alleged telephone conversation is that plaintiff had not the intention of making any claim for which his employer was liable. It is true that the provisions of the statute relative to notice are to be construed liberally in favor of the claimant. It is believed that no construction of the Act has gone so far

as to hold the claim sufficient where there was no semblance of the assertion of any claim."

In the cited case, the plaintiff-claimant cited cases to support his contentions, but the court pointed out that they were distinguishable from the cited case and hence not applicable. The distinguishing point was that in the cases cited by the plaintiff (and in the cases cited by the defendant here), where notice was held to be sufficient where no written notice was given, the injuries were sustained in the presence of the officers of employers. The court also wrote at page 643:

"The testimony in the instant case discloses that plaintiff knew that notice should be given to the employer and he may have considered the telephone talk sufficient, but that does not satisfy the need of a notice to the employer."

In the case presently before this Court, the record shows that the employer received one telephone call from the claimant's wife on the morning subsequent to his heart attack, which was sustained at home. The substance of that call is as follows:

"* * * and I spoke to Bob Thomas, who answered the telephone and told him Charles had been ill the night before, and that the doctor said he had a heart attack, and that he was in the hospital." (Govt.Ex. 1, Tr. p. 142, testimony of Mrs. Duell on cross-examination.)

There is no evidence that any further notice was given, and nothing was offered to refute the plaintiffs' contention that they received nothing else until January of 1957 at which time the claimant filed a formal claim. The heart attack occurred on January 31, 1956.

Also, the record shows that Mr. Duell, the claimant, received compensation known as "a non-occupational sick benefit." As a matter of record, these checks were sent to Mr. Duell through his employer, Good Impressions, Inc. (Tr. p. 248). Mrs. Duell testified that "he re-ceived a sick benefit allotted him for thirteen weeks." (Tr. p. 144) The normal conclusion to be drawn by a reasonably prudent employer from the evidence before him, and as briefly stated above, is that the employee had suffered an illness not due to his occupation and for which he was being compensated. This would negate any thought the employer would have that the ill employee was going to assert a claim under the Workmen's Compensation Law.

With regard to the lack of written notice, the deputy commissioner found that "the employer, having such knowledge, was not prejudiced by the lack of such written notice." This Court is aware of the general principles that the findings of fact of a deputy commissioner are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole, that they are presumed to be correct, and that even if the evidence permits conflicting inferences, the inference drawn by the deputy commissioner is not subject to review and will not be reweighed. However, there was no notice of any type that a work-connected injury, or illness, had been suffered until January 25, 1957, or almost a full year after the illness occurred, on which date the claimant filed a formal claim. One of the purposes of the notice requirement is to give "protection to the employer and the insurer, so that they may be enabled (1) to investigate an accident at the earliest possible moment and thereby obtain such evidence as may be necessary to defeat false or fraudulent claims; and (2) to correct conditions that may have caused the accident, thereby decreasing the risks incident to, and improving the conditions of employment generally." Bethlehem Steel Co. v. Parker, supra [72 F. Supp. 37]. As stated above, one of the purposes of the notice statute is to afford the employer an opportunity for prompt investigation, and this would necessarily include prompt medical examinations and treatment. This is true no matter what the nature of the injury or illness, but in a case such as this it

is all the more important because of the nature of the illness, namely heart trouble. As shown by the record in this case, changes in the condition of a claimant may occur from day to day, and the longer the delay in examining the person, the more difficult it becomes to ascertain his condition on the day the illness occurred. Thus, it becomes evident that when a person asserts a claim under the Workmen's Compensation Law, the employer or his insurance carrier should be afforded a prompt opportunity to examine the claimant at the earliest possible time—especially when conditions of the heart are involved. Thus, in the present case, it is apparent as a matter of law that the employer and insurer were deprived of the 'protection' referred to above.

Accordingly, the motion of the defendant for summary judgment is hereby denied, and the plaintiffs' motion for summary judgment is hereby granted. Counsel will submit appropriate order.