(No. 52631.—

MOORE ELECTRIC COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Lyle Parish, Appellee).

*Opinion filed December 1, 1980.*

Barash & Stoerzbach, of Galesburg (Burrell Barash, of counsel), for appellant.

Perz and McGuire, of Chicago (Frank M. Perz and James M. Ridge, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The claimant, Lyle Parish, filed an application for adjustment of claim with the Industrial Commission on April 21, 1975, to recover benefits from the respondent, Moore Electric Company, for injuries allegedly received in an accident which took place in the course of his employment on December 20, 1974. The arbitrator found that the claimant had sustained injuries which were compensable, but denied the claim on the ground that Parish had failed to give the respondent notice of his accident within 45 days as required by section 6(c) of the Workmen's Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.6(c)).

The Commission affirmed the arbitrator's finding as to the occurrence of the accident, but found that notice had been given within the time required. It awarded Parish compensation, and ordered the respondent to pay Parish for medical expenses incurred. The circuit court of Knox County confirmed the decision of the Commission, and the respondent appealed under Rule 302(a)(2) (73 Ill. 2d R. 302(a)(2)).

The principal issue raised by the respondent is that the Commission's finding that Parish gave timely notice

of the accident is against the manifest weight of the evidence.

Parish testified that the accident took place on a jobsite at 2:30 p.m. while he was standing on a ladder to install a light fixture. The ladder sank into some mud on which it was positioned, and Parish, to avoid falling into the building, leaped to a concrete pavement below, a distance of approximately seven feet, landing on his heels and then falling to his knees. He immediately felt a burning sensation in the lower part of his back, but the sensation went away, and he returned to finish his job. No mention was made in his testimony of a foreman or any other employee having been present when the accident occurred.

Following work he went back to the respondent's shop at about 4:15 p.m., where he found the owner, Virgil Moore, and four employees. Asked whether he had had a conversation with Moore at that time, Parish testified that he "just mentioned the fact I fell off the ladder," to which Moore said only "Oh." Parish did not testify that he told Moore of the circumstances of his fall, and Moore asked no questions.

The accident took place on a Friday. The following week Parish noticed a "catch" in his lower back whenever he sat down or got up, but he continued to work. On or about January 1, 1975, he began to feel pain when walking. He still continued to work, but on February 14, 1975, he consulted a chiropractor, whom he saw twice a week for three weeks. The treatment received consisted of the manipulation of one leg. His condition grew worse, and on March 14 he consulted a second chiropractor from whom he received similar treatment, but with no improvement in his condition. He paid each chiropractor himself, and did not request reimbursement from the respondent.

On March 20, he testified, he consulted an orthopedist, Duane A. Willander. Dr. Willander testified that Parish gave him a written personal history in which he reported

his fall from the ladder and stated that he had been experiencing pain in the lower back and the left leg since January 1, 1975. Dr. Willander examined Parish, diagnosed his complaint as a herniated lumbar disc, and had him admitted to a hospital the next day, where a laminectomy was performed. Parish remained under the care of Dr. Willander after his discharge on April 9. He returned to work on May 13. Dr. Willander expressed the opinion that Parish's fall could or might cause a herniated disc. He was also asked on cross-examination whether in his opinion the treatment reportedly given the claimant by the chiropractors would worsen the claimant's condition, and he replied in the negative.

Virgil Moore testified and denied that Parish had ever told him that he had fallen off a ladder. Moore stated that he first learned of this on March 20 through his wife, who had received a telephone call from Parish that day. Moore stated that he had been aware that Parish had been consulting doctors, but he testified that Parish had not told him the reason.

Mrs. Moore, who was also an employee of the respondent, testified, confirming Parish's call to her on March 20. She testified further that before Parish went to the hospital she and her husband were aware that he was feeling quite a bit of pain, and that he had been seeing a doctor. Parish had not told her and her husband what was wrong, however; nor did they inquire.

Moore testified that it was his regular practice to be in the office at 4:30 p.m. each day for the purpose of checking the employees' time slips and to go over their day's work. If an employee were to tell Moore that he had fallen off a ladder, a notation of that fact would be made.

Both Moore and Margie Johnson, who was employed by the respondent as a secretary, testified to a conversation between the latter and Parish in Moore's presence

on January 21. Another employee had come in with a smashed finger, and Mrs. Johnson, who was responsible for preparing reports of occupational accidents required under the Federal Occupational Safety and Health Act, made a note of this on a log which she maintained. Mrs. Johnson, who had been hired only a few days before, then noticed that Parish was limping, and asked him whether she should list him too. Her testimony and that of Moore differed from that given by Parish as to what he had replied. The respondent's witnesses testified that he had said, "No, it is an old injury; it didn't happen on the job." A notation made by Mrs. Johnson in her log was to the same effect. Parish, who was recalled for further examination after the respondent had closed its case, recollected having told Mrs. Johnson that his injury was an old one, meaning, he said, that it had not occurred that day, but he did not believe he had said that the injury had not occurred on the job.

Mrs. Johnson also testified to a telephone call from Parish while he was in the hospital regarding insurance forms in which she said he admitted that he had not reported his fall at the time it occurred. A notation to that effect also appears in her log.

It is the Commission which is the judge of a witness' credibility, and it is its function to decide questions of causation. The Commission was entitled to accept Parish's testimony that he told Moore that he had fallen from a ladder. (See *City of Rockford v. Industrial Com.* (1966), 34 Ill. 2d 142, 144-45; *Atlantic & Pacific Tea Co. v. Industrial Com.* (1977), 67 Ill. 2d 137, 142-43; *Thrall Car Manufacturing Co. v. Industrial Com.* (1976), 64 Ill. 2d 64 Ill. 2d 459, 465-67.) Moore and his wife were admittedly aware that subsequently Parish was having pain and was consulting doctors. Although Parish's communication to Moore was certainly not specific, the Commission could

have concluded that it gave the respondent adequate notice that Parish's fall had resulted in a work-connected injury.

The respondent also contends that there is no evidence to support Parish's claim that he was injured on December 20, and that that claim is inconsistent with his having continued to work after his alleged injury. We cannot agree. ·Dr. Willander's testimony that Parish's injury could have been caused by his fall was undisputed, and the respondent introduced no expert· testimony designed to show that Parish would have been immediately incapacitated after his fall. The causal connection between his fall and the injury suffered is a question confided to the decision of the Commission. Though a court might draw different inferences from the evidence, it is axiomatic that findings of the Industrial Commission will not be reversed unless they are contrary to the manifest weight of the evidence. *O'Dette v. Industrial Com.* (1980), 79 Ill. 2d 249.

The judgment of the circuit court is accordingly affirmed.

*Judgment affirmed.*