HOWREY & SIMON, et al., Petitioners,

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**Edith R. Foster, Intervenor.**

No. 85–1030.

District of Columbia Court of Appeals.

Argued July 1, 1986.

Decided Sept. 17, 1987.

Theresa E. Cummins, with whom Stephen L. Altman, Rockville, Md., was on the brief, for petitioners. Linda Lawrence Stankus, Washington, D.C., also entered an appearance for petitioners.

Beverly J. Burke, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time the memorandum was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the memorandum in lieu of brief, for respondent.

---

Peter J. Vangsnes, Washington, D.C., for intervenor Edith R. Foster.

Before MACK, NEWMAN and BELSON, Associate Judges.

MACK, Associate Judge:

Edith Foster is totally disabled as a result of a fall suffered when she tripped over a heavy box left on the floor of the office of her employer, Howrey & Simon. Her claim for workers' compensation was upheld, after exhaustive discovery and a full and fair administrative hearing, at two levels of the District of Columbia Department of Employment Services (DOES). The only issue before this court is whether Ms. Foster's claim should be barred because of untimely notice of the injury to the employer. The agency determined the notice requirement was satisfied because the employer had actual knowledge of her injury. Finding the agency's construction of the statute reasonable, we affirm.

## I

D.C.Code § 36–313 (1981) provides that a claimant must give written notice to the employer within thirty (30) days of first becoming aware of an employment-related injury. There are two exceptions to this rule, however. D.C.Code § 36–313(d)(1) provides that failure to give written notice will not bar a claim if the employer had knowledge of the injury and its relationship to the employment, and the employer has

not been prejudiced by failure to give notice. D.C.Code § 36–313(d)(2) provides that the failure to give written notice may be excused for some other reason, such as that notice could not be given.[1]

At the first level of the administrative process, a hearing examiner concluded that Ms. Foster's claim should not be barred because her good faith effort to give notice, coupled with the failure of her employer's agent to understand the notice, constituted a satisfactory reason why proper notice was not given. At the second level, the director of DOES disagreed with the hearing examiner's reasoning for excusing failure of timely notice under § 36–313(d)(2), but concluded that because Howrey & Simon had *actual notice* of the injury and its relationship to the employment and was not prejudiced by the late filing, the employee's claim was not barred because of § 36–313(d)(1). DOES found that an employer has actual knowledge of an injury and its relationship to employment when "there is an incident at work witnessed by an employer's representative which ultimately results in an injury ... [and] both the injured employee and the employee's representative had underestimated the seriousness of the incident at the time of the incident." The director's interpretation of the "knowledge exception" to the formal notice provision of the Act is not only consistent with the statutory language of the Act, but is also in harmony with the purposes of the notice provision and with

1. D.C.Code § 36–313 (1981) provides, in pertinent part:

(a) Notice of any injury or death in respect of which compensation is payable under this chapter shall be given within 30 days after the date of such injury or death, or 30 days after the employee or beneficiary is aware or in the exercise of reasonable diligence should have been aware of a relationship between the injury or death and the employment. Such notice shall be given to the Mayor and to the employer.

(b) Such notice shall be in writing, shall contain the name and address of the employee and a statement of the time, place, nature, and cause of injury or death, and shall be signed by the employee or by some person on his behalf, or, in case of death, by any person claiming to be entitled to compensation for such death or by a person on his behalf.

\* \* \* \* \* \*

(d) Failure to give such notice shall not bar any claim under this chapter:

(1) If the employer (or his agent in charge of the business in the place where the injury occurred) or the carrier had knowledge of the injury or death and its relationship to the employment and the Mayor determines that the employer or carrier has not been prejudiced by failure to give such notice; or

(2) If the mayor excuses such failure on the ground that for some satisfactory reason such notice could not be given; or unless objection to such failure is raised before the Mayor at the 1st hearing of a claim for compensation in respect of such injury or death. (July 1, 1980, D.C.Law 3–77, Sec. 14, 17 DCR 2503.)

the rule preferred in most jurisdictions.[2] For these reasons, we find the agency's construction of the statute reasonable and affirm.

Edith Foster worked as an accounting clerk for Howrey & Simon. On January 18, 1983, Ms. Foster was carrying some papers when she walked around a file cabinet and tripped over a heavy box. Breaking her fall somewhat with her right hand, she landed on the carpet with a loud crash and with her right thigh over the box. Several people, including Ms. Foster's supervisor, came over and asked her if she was all right. She indicated that she was "shook up," but that she thought she would be all right. Ms. Foster returned to her desk for awhile, but then went upstairs to a room with a bed in it to lie down for awhile.

During the next month, Ms. Foster began to feel pain in her hip and leg. She sought medical attention for the pain, and was given arthritis medication. Although she continued to work, and her doctor tried different treatments, claimant's pain worsened.

Ms. Foster stated that she discussed her condition with her co-workers as well as her supervisor, Mr. Lucien Richard, and Ms. Jan Dietrich, employer's manager. Sometime during the spring of 1983, Ms. Foster told her supervisor that her left hand had been hurting her ever since her fall, though she was not sure if there was a connection, and that one of her legs bothered her. In May 1983, claimant requested part-time employment from Mr. Richard, and discussed her leg and hip problems with reference to the January fall. Ms. Foster also requested part-time work status from Jan Dietrich. Ms. Foster explained that her need to switch to a physically less demanding part-time schedule stemmed from difficulties she was experiencing in sitting in one place for any length of time due to the pain in her back and leg. She told Ms. Dietrich that she thought her leg and hip problems were the result of her January fall.

In mid-June she told Mr. Richard that she was going into the hospital for testing. Claimant testified that she explained to Mr. Richard that the testing was to determine the cause of her physical problems and that the condition might be related to her fall in January. Before the testing could begin, however, claimant's condition deteriorated and she was placed in the hospital in traction. Ms. Foster was referred to an orthopedic specialist by her doctor, and on June 14, 1983, when she was in the hospital, the orthopedist told claimant that her fall in January caused the pain in her leg and hip because she had suffered a back strain.

Upon her return from the hospital, claimant wore a brace. She could not sit up straight or walk straight. Ms. Foster changed office chairs numerous times, and tried to sit with a pillow to ease her pain. She told Mr. Richard that she had been advised by a doctor for the first time that her pain was related to the January injury. Ms. Foster stopped working after about a week.

Richard and Dietrich gave different accounts of claimant's fall and her oral notice. Richard denied that claimant ever spoke to him about her fall after the accident. Dietrich stated that she did not learn that Ms. Foster's injuries were work-related until she received a phone call from employer's insurer, Atlantic Mutual Insurance Company, on August 16, 1983. This testimony conflicted with Dietrich's earlier testimony that Ms. Foster had spoken with her about a back problem when inquiring about the possibility of part-time work in the spring of 1983. The hearing examiner specifically credited Ms. Foster's testimony concerning her recall of what she had told Richard and Dietrich, calling her a "very

---

2. The director's conclusion is further buttressed by the principle, followed in this jurisdiction under the Longshore Act, that knowledge on the *part of the* employer will be found if the employer "has facts that would lead a reasonable man to conclude that compensation liability is possible." *Stevenson v. Linens of the Week,* 233 U.S.App.D.C. 1, 8, 688 F.2d 93, 100 (D.C.1982). Thus, section 20(b) of the Longshoreman's Act creates a presumption that sufficient notice of the claim has been given. This applies not only to written notice but to actual notice. Here, there was not evidence to overcome the statutory presumption.

credible" witness.[3] The examiner rejected Mr. Richard's testimony to the extent it conflicted with Ms. Foster's version of her fall. She noted that Richard had "an interest in trivializing the incident in order to justify his own failure to report the injury."

## II

According to Professor Larson in his treatise THE LAW OF WORKMEN'S COMPENSATION, the purpose of notice provisions is two-fold: "First, to enable the employer to provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury; and second, to facilitate the earliest possible investigation of the facts surrounding the injury." A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 78.10 at 15–81 (1983). Where, as here, the employer actually witnesses the incident, no further investigation is necessary. If the employee ultimately pursues a compensation claim, the employer has all the facts that would be necessary to confirm or controvert the employee's version of what happened and to dispute, if appropriate, the causal connection between the incident and the subsequent disability. Similarly, if the employer knows as much about the symptoms as the claimant does, it has all the facts necessary to consider, when the claim is ultimately made, whether the disability is work-related and whether the extent of the injury is consistent with the facts of the occurrence.

Finally, if both employer and employee underestimate the seriousness of the injury, and neither believes that immediate medical treatment is necessary, the interest of the employer in having the knowledge necessary to facilitate prompt medical attention is not disserved. There is no cognizable prejudice to the employer if the claimant's injury was not aggravated because of the employer's inability to provide an early diagnosis and treatment and the employer was not hampered in making his investigation and preparing the case. Here, there

was no apparent reason to seek immediate medical attention (neither Ms. Foster nor Mr. Richard were aware of the extent of her injuries). Moreover, because Mr. Richard actually witnessed the fall, the employer was aware of the circumstances surrounding the injury later discovered, thus obviating the need for an "early investigation."

■ The better-reasoned decisions in the caselaw cited in Professor Larson's treatise support the finding of actual knowledge here. For example, in *Beatrice Foods Co. v. Clemons*, 54 Ala.App. 150, 306 So.2d 18 (1975), the claimant fell while alighting from his employer's truck. He reported orally to his supervisor that he had fallen, but the supervisor made no inquiry as to the extent of his injury or if he needed to see a doctor. The supervisor stated that he made no written report, nor was he aware that such a report was necessary. Claimant returned to work when scheduled and continued to work regularly until some eight months after the fall. His back injury, evidenced by increasing pain, eventually required surgery. The court in *Beatrice Foods* found the employer had actual knowledge. *See also McElhannon v. St. Paul Fire & Marine Insurance Co.*, 141 Ga.App. 169, 233 S.E.2d 28 (1977) (claimant felt sudden pain in her back, leg and foot while carrying sixteen pounds of paper; court found actual knowledge where employer knew of claimant's pre-existing injury and observed aggravation of pre-existing injury while on the job); *Yerhart v. Geo. A. Hormel & Co.*, 303 Minn. 540, 225 N.W.2d 851 (1975) (foreman had sufficient knowledge of the facts and circumstances of employee's injury to put him on inquiry that the disability was work-related, where claimant operated forklift truck over holes in the floor of his work area); and *Moore Electric Co. v. Industrial Commission*, 83 Ill.2d 43, 46 Ill. Dec. 149, 413 N.E.2d 1262 (1980) (employer had actual knowledge where claimant asserts he gave oral notice of fall from ladder and where employer

---

**3.** The hearing examiner did not discredit the testimony of Richard and Dietrich regarding claimant's attempts to notify them, but found both failed to "get the message" about claimant's injury.

was aware that claimant was experiencing pain and consulting doctors).

The agency's finding of actual knowledge here is not only legally sound, it is logically sound. Accidents which appear minor at the time they occur may result in greater injury than anticipated. Courts often find actual knowledge in such circumstances. For example, in *Korzeniewski v. M.W. Kellogg Co.*, 12 A.D.2d 570, 206 N.Y. S.2d 985 (1960), the claimant dropped a metal weight on his big toe. The foreman testified that he "put a bandage on it and [he] didn't think anything about it." The injured toe became gangrenous and was amputated about five weeks after the accident. The amputation wound thereafter became infected and claimant was totally disabled for some five months. The court found the employer had actual knowledge of the injury. Similarly, in *N.L. Industries v. Childs*, 150 Ga.App. 866, 258 S.E.2d 667 (1979) the employer was found to have actual knowledge where claimant hurt his thumb, but continued to work for several months thereafter without filing any claim for compensation. Claimant eventually became totally disabled and was admitted to the hospital for corrective surgery. *See also Ragland Brick Co. v. Campbell*, 409 So.2d 443 (Ala.Civ.App.1982) (actual knowledge of injury of leg sufficient to meet notice requirement with regard to both leg and back injury).[4]

### III

■ This court has held time and time again that where there is broad delegation of authority to an administrative agency, we must give deference to a reasonable construction of the regulatory statute

made by the agency. *See Grayson v. District of Columbia Department of Employment Services*, 516 A.2d 909, 912 (D.C. 1986); *McDaniels v. District of Columbia Department of Employment Services*, 512 A.2d 990, 991 (D.C.1986); *Hughes v. District of Columbia Department of Employment Services*, 498 A.2d 567, 570 (D.C. 1985); *Gomillion v. District of Columbia Department of Employment Services*, 447 A.2d 449, 451 (D.C.1982); *Hockaday v. D.C. Department of Employment Services*, 443 A.2d 8, 12 (D.C.1982); *Thomas v. District of Columbia Department of Labor*, 409 A.2d 164, 169 (D.C.1979). Because none of the policies underlying the notice provision are implicated in this case, and given that the director's holding here expresses a rule that appears to be both generally recognized and preferred by Professor Larson in his treatise on workmen's compensation, we find that far from being an unreasonable construction of the statute, the director's construction is both reasonable and fair.

*Affirmed.*

BELSON Associate Judge, dissenting:

The majority defers to a statutory misconstruction that is plainly unfair to District of Columbia employers. As the Department of Employment Services construes the District of Columbia Workers' Compensation Act of 1980,[1] an employer is deemed to have actual knowledge of a work-related injury if, without more, the employer, through its agent, witnesses an incident at work that results in no immediately discernible physical harm to the employee, but ultimately produces such harm.

---

4. The state cases cited by the dissent to support its restrictive interpretation of actual knowledge turn on different facts than those present here. In *Bagley v. Hotel Florence Co.*, 165 Mont. 145, 146–50, 526 P.2d 1372, 1373–74 (1974) the claimant's fall was not witnessed by the employer, and the claimant did not assert a link between the fall and the injury until almost three years after the fall. In the two other cases cited by the dissent, *Kresge v. Holley*, 104 Ga.App. 144, 146–47, 121 S.E.2d 182, 184 (1961) and *Monks Excavating & Redi-Mix Cement v. Kopsa*, 148 Colo. 586, 590–91, 367 P.2d 321, 323 (1961), the employer witnessed the accident, but the employee sought no immediate respite and remained silent about the effects of the accident. Specifically, in *Monks Excavating*, the claimant's lack of reaction to his fall, his failure to make any mention of back difficulties over the next ten months, and his unique relationship with his employer was dispositive (the court noted that as employer's son-in-law, claimant was in a position to communicate even the slightest symptoms).

1. D.C.Code § 36–301 to –345 (1981 & 1987 Supp.).

Properly construed, the statute provides that the mere witnessing of such an incident by an employer does not, of itself, constitute actual knowledge of a work-related injury. I would remand this case for a finding as to whether the employer had actual knowledge based on timely oral notice.

The salient facts are, for the most part, set forth in the majority opinion. I will add only some pertinent details, and will refer to one significant finding of fact that the majority does not seem to take into account. It was undisputed that claimant was sixty-two years old at the time of the incident and had been employed by the law firm of Howrey and Simon for approximately twenty-one months. After she tripped and fell in the office on January 18, 1983, she stated to her supervisor that she was "just shook up" and thought that she was "all right." She then worked for a bit, went to a room where she was able to lie down for a while, and thereafter returned to work for the remainder of the day. It was not until the end of the following month that the claimant began to feel pain in her hip and leg which she eventually attributed to the incident.[2] The hearing examiner made a significant finding about the circumstances of claimant's fall to which the majority gives no recognition. The examiner found that although claimant's supervisor "may have seen claimant trip[,] he had no reason to believe she was injured." She went on to find that the facts of the incident were not such as would "lead a reasonable person to conclude that compensation liability was possible and that he/she ought to investigate the matter."

Nevertheless, DOES sustained claimant's award of disability benefits on the grounds that D.C.Code § 36–313(d)(1) (1981) applied because the employer had actual knowledge of claimant's injury and its relationship to employment and had not been prejudiced by the late filing of a disability claim. According to DOES, an employer has actual knowledge of an injury and its relation-

ship to employment whenever "there is an incident at work witnessed by an employer's representative which ultimately results in an injury ... [and] both the injured employee and the employee's representative had underestimated the seriousness of the incident at the time of the incident." Having so construed D.C.Code § 36–313(d)(1), the Director noted that claimant's supervisor witnessed her fall and that neither claimant nor supervisor regarded it as significant at the time. Those observations, coupled with a finding that the employer had experienced no prejudice as a result of claimant's late filing of a disability claim, prompted the Director to uphold the award of disability benefits to claimant.

Where, as here, an agency is charged with implementing a statute, we give due deference to an agency's reasonable interpretation of that statute. *McDaniels v. D.C. Dep't of Employment Servs.*, 512 A.2d 990, 991 (D.C.1986) (upholding DOES construction of D.C.Code § 36–308 (1981); *accord, Hughes v. D.C. Dep't of Employment Servs.*, 498 A.2d 567, 570 (D.C.1985); *Gomillion v. D.C. Dep't of Employment Servs.*, 447 A.2d 449, 451 (D.C.1982); *Hockaday v. D.C. Dep't of Employment Servs.*, 443 A.2d 8, 12 (D.C.1982); *Thomas v. D.C. Dep't of Labor*, 409 A.2d 164, 169 (D.C.1979). At the same time, we are empowered to set aside any agency action "not in accordance with law." D.C.Code § 1–1510(a)(3)(A) (1987); *see, e.g., McDaniels v. D.C. Dep't of Employment Servs., supra*, 512 A.2d at 991; *DeLevay v. D.C. Rental Accommodations Comm'n*, 411 A.2d 354, 359–60 (D.C.1980) (court will not defer to agency interpretation where contrary to statutory language or legislative history; agency's interpretation of D.C. Code § 45–1652(g) (1978 Supp.) (repealed 1978) erroneous on grounds of inconsistency with statutory language).

I begin my analysis by examining the relevant portions of D.C.Code § 36–313. The statute provides that "[i]f the employer ... had knowledge of the *injury* ...

2. In this regard, the majority opinion states, ante at 256, "During the next month, Ms. Foster

began to feel pain in her hip and leg."

and its relationship to the employment," then a claimant's failure to give written notice of such an injury within thirty days of the injury (or thirty days from the date when the claimant knew or should have known of the relationship between injury and employment) may be excused if the Mayor determines that the employer was not prejudiced thereby. D.C.Code § 36-313(a), (b), (d)(1) (1981) (emphasis added). The validity of DOES' construction of this statutory exception turns on the proper meaning to be accorded the term "injury."

> According to D.C.Code 36–301 (12) (1981),
>
> "Injury" means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of third persons directed against an employee because of his employment.

*Id.* The foregoing definition of "injury" is, in and of itself, more remarkable for its circularity than its clarity. The definition equates an "injury" with an "accidental injury." This latter term, I note, is one this court has had occasion recently to construe. In *WMATA v. D.C. Dep't of Employment Servs.*, 506 A.2d 1127 (D.C.1986) (per curiam), issued after DOES' final compensation order in this case, we upheld DOES' interpretation of D.C.Code § 36–301 (12) that a person seeking workers' compensation benefits "need prove only that something unexpectedly went wrong within the human frame," 506 A.2d at 1128, noting that our courts had repeatedly so construed "accidental injury," *id.* at 1129. *Accord, Jones v. D.C.Dep't of Employment Servs.*, 519 A.2d 704, 708–09 (1987). Thus, after DOES issued its decision in the instant case, it became clear, if it was not before, that the only interpretation of the term "injury" in D.C.Code § 36–313(d)(1) that could be consistent with the established interpretation of "accidental injury" in D.C.Code § 36–301(12) is that "injury"

means that "something unexpectedly went wrong within the human frame."

In light of our decision in *WMATA v. DOES, supra,* we must construe D.C. Code § 36–313(d)(1) to mean that an employer has knowledge of an injury only when the employer is aware, or should be aware, that something has unexpectedly gone wrong within the human frame.[3] The occurrence here failed to meet this standard because, as the Hearing Examiner specifically found:

> Mr. Richard may have seen claimant trip but he had no reason to believe she was injured. Indeed, the claimant did not suffer ill effects from the fall until late February. The facts of this case would not ... lead a reasonable person to conclude that compensation liability was possible and that he/she ought to investigate the matter.

The record amply supports the hearing examiner's determination that the circumstances surrounding claimant's fall would not have led a reasonable person to conclude that compensation liability was possible and that the matter required investigation. I submit that we should reject DOES' broader interpretation of the term "knowledge of the injury" to encompass awareness of incidents or accidents, where no physical harm reasonably could or should have been discerned by the employer. Rejection of DOES' attempt to broaden the scope of D.C.Code § 36–313(d)(1) should flow not only from the need to promote consistency in statutory interpretation, but also from a conviction that DOEs' position is inconsistent with legislative intent. This court recently summarized the purposes D.C.Code § 36–313 was designed to serve:

> Prompt notice to the employer of an on-the-job injury serves several goals. It enables the employer to provide immediate medical diagnosis and treatment, and also facilitates the earliest possible investigation of the facts surrounding the injury. 3 LARSON, WORKMEN'S COMPENSA-

---

**3.** The text of pertinent portions of D.C.Code § 36–313 is set forth in the majority opinion,

ante at 255 n. 1.

TION LAW, § 78.10 (1st ed. 1983). Early investigation serves to protect the employer and the carrier from false or fraudulent claims, and also allows for prompt correction of conditions that may have caused, or contributed to, the injury. *Good Impressions, Inc. v. Britton,* 169 F.Supp. 866, 870 (D.D.C.1958).

Section 313(d)(1) provides that failure to give prompt written notice as required by section 313(a) will not bar a claim if the employer or carrier has knowledge of the injury and has not been prejudiced by the employee's failure to notify. This section seeks to ameliorate the harsh consequences of a failure to literally comply with section 313(a) while at the same time assuring that the goals of prompt notice can also be met through actual knowledge. *See* 3 LARSON, WORKMEN'S COMPENSATION LAW, § 78.30 (1st ed. 1983).

*Madison Hotel v. D.C. Dep't of Employment Servs.,* 512 A.2d 303, 307–08 (D.C. 1986).

DOES' construction of D.C.Code § 36–313(d)(1) will assure neither prompt notice, written or oral, nor actual knowledge that something unexpectedly had gone wrong within the frame of an employee. Either would at least make the employer aware that further investigation was warranted. If DOES' interpretation of D.C.Code § 36–313(d)(1) prevails, then under circumstances like those present here, an employee could learn that an incident at work had later ripened into a work-related injury yet fail to notify the employer either in writing or orally after learning she was injured, thus keeping the employer in the dark, whether intentionally or unintentionally, until the filing of a claim for disability benefits. I think that D.C.Code § 36–313(d)(1) does not contemplate a result so contrary to the evident statutory goals to be served by requiring prompt notice.

At the time of the agency's final decision, of course, DOES did not have the benefit of our decisions in *WMATA v. DOES, supra,* and *Madison Hotel, supra.* DOES relied exclusively on two passages from 3 A. LARSON, WORKMEN'S COMPENSA-

TION LAW (1983) to reach its result. Examination of the passages cited and the accompanying cases underscores that even before our opinions in *WMATA* and *Madison Hotel,* DOES was on shaky ground in adopting its construction of D.C.Code § 36–313(d)(1).

The first passage DOES cited read as follows: "The mere witnessing of claimant's mishap or symptoms by a supervisory employee has often been held adequate notice to the employer." 3 A. LARSON, *supra,* § 78.31(a) at 15–85 to –86. At first glance, this passage seems quite helpful to DOES' position. The reference to "mishap or symptoms," however, suggests that not every incident suffices to put an employer on notice that further investigation is warranted. Professor Larson's meaning is further illuminated when the foregoing passage is read in context with the sentences which follow it.

> In the typical case, claimant suffers certain pains and symptoms, has to rest or lie down, complains to the foreman, and is taken to the first aid room and observed by a company nurse or doctor. Through the foreman or doctor or both the employer is usually held to have obtained as complete notice as the injured worker could give, since he could provide no more details of the circumstances and manifestations of his injury than the others witnessed. It is not enough, however, that the employer, through his representatives, be aware that claimant "feels sick," or has a headache, or *fell down,* or walks with a limp, or has a pain in his back, or shoulder, or is in the hospital, or has a blister, or swollen thumb, or has suffered a heart attack. There must in addition be some knowledge of accompanying facts connecting the injury or illness with the employment, *and indicating to a reasonably conscientious manager that the case might involve a potential compensation claim.*

3 A. LARSON, *supra,* § 78.31(a) at 15–86 to –109 (emphasis added) (footnotes omitted). As the foregoing passage makes clear, Professor Larson did not state that an employer knows of an "injury" whenever a fall is

observed, particularly where, as here, the fall does not produce immediately discernible pain or symptoms. I note again that the hearing examiner found that the fall here was not sufficient to "lead a reasonable person to conclude that compensation liability was possible and that he/she ought to investigate the matter," a prerequisite, according to Professor Larson, for adequate notice of an injury.

Any possibility that Professor Larson envisioned as broad a definition of knowledge of injury as DOES has adopted is erased when one examines certain of the cases cited in the footnotes accompanying the preceding excerpt. *See, e.g., Bagley v. Hotel Florence Co.*, 165 Mont. 145, 146–50, 526 P.2d 1372, 1373–74 (1974) (claimant testified that immediately after an unwitnessed fall she told employer's claims representative that she had fallen and that she "was shook up, but that's all"; "no indication given to [the employer] that claimant *had* suffered any injury") (emphasis in original); *Kresge v. Holley*, 104 Ga.App. 144, 146–47, 121 S.E.2d 182, 184 (1961) ("mere fact that the employer's agent saw the claimant fall" insufficient to put employer on notice of injury, as distinguished from notice of accident); *Monks Excavating & Redi-Mix Cement v. Kopsa*, 148 Colo. 586, 590–91, 367 P.2d 321, 323 (1961) (fact that employer personally witnessed claimant "knocked to the ground" proves only notice of accident, not notice of injury; only notice of the latter requires employer to do anything).

Those cases cited in connection with the preceding excerpt from 3 A. LARSON, *supra*, where employer knowledge was found, involved discernible harm to the employee and are therefore inapposite to this case. *See, e.g., Nagy v. Nat'l Can Co.*, 277 A.D. 1083, 100 N.Y.S.2d 807, 808–9 (1950) (claimant lost control of metal pressing machine, "because frightened, nervous and broke into profuse perspiration"; foreman saw him assisted away by fellow workers, whereupon claimant received medicine at first aid room and was sent home; claimant's "sudden and acute illness" held adequate notice to employer "of the accident and injury"); *Nat'l Malleable & Steel*

*Casting Co. v. Indus. Comm'n*, 406 Ill. 480, 483, 94 N.E.2d 352 (1950) (claimant fell two feet to cement pavement, striking his shoulder; claimant told foreman about the accident "and received treatment [of the shoulder from the company physician] frequently after the accident"; evidence held sufficient to support finding of notice).

The second passage from 3 A. LARSON, *supra*, quoted in DOES' final decision also does not bear the weight DOES would place on it. The second passage reads as follows:

> ... it is not reasonable to expect an employer to launch an investigation every time a foreman hears someone complain of a pain or sees someone get a bump, and such knowledge does not therefore satisfy the objectives of the notice statute. On the other hand, if the employer's representatives are aware of the circumstances surrounding the occurrence of the injury and know as much about the symptoms as claimant himself could report, the knowledge will be deemed sufficient even if the employer and employee both underestimate the seriousness of the injury.

*Id.*, § 78.31(a) at 15–113. Four cases are cited to exemplify what is meant by this excerpt. All four are distinguishable from the case at bar, because each involved physical harm to the claimant that the employer either observed or should have discovered because of the nature of the accident. *See Ragland Brick Co. v. Campbell*, 409 So.2d 443, 445 (Ala.Civ.App.1982) (upheld finding of actual knowledge of injury because claimant informed his supervisor that he had fallen and that "his back hurt"); *Stratton-Warren Hardware v. Parker*, 557 S.W.2d 494, 496 (Tenn.1977) (claimant gave adequate notice when, upon learning that his respiratory problems were work-related, he timely presented his employer with a letter from his physician so indicating); *Blue Bird Mining Co. v. Litteral*, 314 Ky. 709, 710–13, 236 S.W.2d 936, 937–38 (1951) (when foreman saw fist-sized lump of coal fall from height of over twenty feet onto claimant's head and knock his helmet off, employer had notice of injury

because "[i]t is common knowledge that a severe lick on the head may be followed by serious injury"; claimant also sought to visit company's camp physician the next morning after noticing a bloody discharge from his ear, and was eventually seen by him three days later); *Miller v. Peterson Constr. Co.*, 229 Minn. 22, 25–29, 38 N.W.2d 48, 50–51 (1949) (claimant gave "notice of a claimed aggravation" when he told foreman that "he had a pain in his leg [that] 'got worse from raising the staging' ").

Given the hearing examiner's finding that claimant's supervisor had no reason to believe that claimant was injured, a finding fully supported by the evidence, I submit that the incident itself did not give the employer actual knowledge of a work-related injury. That being so, the employee's claim should fail for lack of notice unless she gave the employer notice in some other way. As the majority opinion sets forth, *ante* at 256, there was a factual dispute with respect to whether the claimant gave her supervisors oral notice of her injury. The hearing examiner credited the claimant's testimony that she told two of the employer's representatives about the connection between her fall and the pain in her leg and hip. But the hearing examiner also found that those representatives of the employer "did not get the message," and "they did not have actual knowledge that claimant suffered a work-related injury" until August 16, 1983, when they received a telephone call from an insurance carrier. In effect, the hearing examiner stated that the claimant said something to the employer's representatives, but they did not hear it. Such a failure of communication is exceptional, although certainly not impossible. Because I regard this particular factual determination as crucial to the outcome of the claim, I think that in the interest of a fair adjudication, we should remand the case to DOES with the instruction that amplified findings be made on this particular point.

For the reasons stated above, I respectfully dissent.