**RELIANCE DIECASTING COMPANY and Commercial Standard Insurance Company, Appellants,**

v.

**Theron FREEMAN and Kentucky Workmen's Compensation Board, Appellees.**

Court of Appeals of Kentucky.

Oct. 1, 1971.

Burke B. Terrell, Terrell, Schultzman & Hardy, Paducah, for appellants.

Louis V. Mangrum, Mayfield, J. Keller Whitaker, Workmen's Compensation Bd., Frankfort, Wayne W. Freeman, Mayfield, for appellees.

CULLEN, Commissioner.

The Workmen's Compensation Board awarded Theron Freeman compensation for total permanent disability by reason of a herniated disc found by the board to have been caused by an accident on April 12, 1969, when Freeman fell from a stepladder while performing janitorial work for his employer, Reliance Diecasting Company. The board directed that compensation be paid commencing from the date of *disability* but terminating 425 weeks from the date of the *accident*, KRS 342.095. The employer appealed to the circuit court, maintaining that Freeman's claim should have been rejected because of his alleged failure to comply with the requirement of KRS 342.185 and 342.190 that notice of accident be given to the employer "as soon as practicable after the happening thereof." The employer further maintained that the proof did not support the board's finding that the herniated disc was caused by the accident. Freeman cross-appealed, asserting that the period of compensation payments should have been made to terminate 425 weeks from the date he became *disabled* (which was September 16, 1969) rather than from the date of *injury* (which was April 12, 1969).[1] The circuit court affirmed the order of the board, both on the appeal and on the cross-appeal. The employer has appealed from the circuit court judgment, and Freeman has cross-appealed. Each makes the same contentions that he made in the circuit court.

We shall consider first the question of notice of injury.

The requirement of KRS 342.185 that notice of "accident" be given as soon as practical has been construed, in light of KRS 342.190, to mean that notice of *injury* must be given, and this means notice of "the specific injury for which the employee is claiming compensation." Proctor and Gamble Manufacturing Co. v. Little, Ky., 357 S.W.2d 866.

In the instant case the employer admittedly received notice of the *accident* immediately after it happened, since Freeman's supervisor arrived at the scene a few moments after Freeman fell from the ladder.

---

1. The practical difference being that under the board's order Freeman will be compensated for 403 weeks only, since he was not entitled to compensation until he became disabled on September 16, 22 weeks after the injury.

However, at that time there were no evidences of any injury other than momentary shock. The record indicates rather conclusively that notice of the *injury*—the herniated disc—was not given to the employer until late in July or early in August 1969, some four months after the accident. Freeman testified that he asked his supervisor for medical treatment "right after" the date of the accident, but the conditions which he said existed at his place of employment at the time he made that request did not in fact exist until late in July or early in August, so "right after" was a somewhat loose expression.

Freeman testified that his back began to give him pain starting the day after the accident. However, he did not consult a doctor until early in August and then for the first time he was informed that he had a herniated disc. In the meantime (and even for several weeks after he gave notice of injury) he continued to work with substantial regularity. However, two fellow employes testified that he developed a noticeable limp, one saying that it was first noticeable two or three *days* after the accident, and the other fixing the time as two or three *weeks* after the accident.

■ The evidence warranted the conclusion that the initial indications of an injury of consequence were slight, and that the development of the injury into disabling reality was gradual; that Freeman was not informed that he had a diagnosable injury, relatable to the accident of April 12, until late in July or early in August, and that he then immediately gave ntoice to his employer.

In Blue Beard Mining Co. v. Litteral, 314 Ky. 709, 236 S.W.2d 936, this court said that notice of *accident* carries with it notice of all those things which reasonably may be anticipated to result from it, and we held that where the employer had notice of an accident in which a large lump of coal fell on a workman's head, the workman was not required to give separate notice later when a diagnosis was made that

he had suffered a skull fracture. We believe the principle of that case is applicable here. Freeman's fall from the stepladder was such as reasonably might be expected to cause a back injury. The employer, having notice of the *accident,* was sufficiently apprised of the probability of *injury* so that it reasonably did not require any further notice until the development of the injury into a compensable state was diagnosed.

The view that the notice in the instant case was sufficient is further supported by Rowe v. Semet-Solvay Division Allied Chemical & Dye Corp., Ky., 268 S.W.2d 416, where the employe did not give notice of *injury* until four months after the accident, when he first received a positive diagnosis of a herniated disc. Other cases holding notice sufficient where it was not given until diagnosis are Columbus Mining Co. v. Childers, Ky., 265 S.W.2d 443, and Proctor and Gamble Manufacturing Co. v. Little, Ky., 357 S.W.2d 866.

Kaufman-Straus Co. v. Bennett, 275 Ky. 264, 121 S.W.2d 1, on which the appellant employer places great reliance, is not controlling here because there the employer had no initial notice of the *accident.*

We now shall consider appellant's second contention, that there was insufficient proof that the herniated disc was caused by the accident of April 12. Two doctors testified on direct examination that in their opinions the accident did cause the injury. On cross-examination they indicated that their opinions would be different if the fact were that Freeman had continued in employment for four months after the accident without seeing "any necessity to seek medical treatment" and that a primary reason for the termination of his employment in September 1969 was that the employer's plant was shut down. One of the doctors replied:

"Well, it would be difficult to say. If he had trouble immediately after the fall, you would tend to attribute it to the fall. If he got along okay and started having

**314** ◼

the problem later, you would tend to not attribute it to the thing."

The other doctor replied that if the facts were as stated, it would "affect" his opinion. However, on redirect examination, upon being asked his opinion as to causation if the facts were that Freeman started having pain immediately after the day of the accident, began taking aspirin, and suffered continuously thereafter up and until he quit his work, but did not see a doctor until August, the doctor answered that his original opinion of causation "would be the same."

◼ The appellant argues that the above testimony shows that the doctors, on the basis of the actual facts, did not find causation. This argument is not acceptable, however, because the evidence warranted the conclusion that the true facts were as stated in the questions asked by Freeman's counsel, on which the doctors did find causation.

◼ Freeman's cross-appeal remains for consideration. KRS 342.095(1) states, with respect to compensation for total disability, that "such payments shall be made during the period of total *disability* but not longer than four hundred twenty-five weeks after the date of the *injury*, or after the date his *disability* from an occupational disease began. If the period of total disability begins after a period of partial disability, the period of partial disability shall be deducted from the total period of four hundred twenty-five weeks during which compensation for total disability may be payable" (our emphasis). The statute clearly distinguishes between *disability* and *injury* and says in plain language that the period of compensability for total permanent injury is to end 425 weeks after the date of the *injury*. The provision for deductions of a period of partial disability emphasizes the proportions that compensation for total disability is to end 425 weeks after the date of *injury* regardless of when the total disability began. The courts cannot prescribe a different ending time sim-

ply on the basis that it might seem more equitable in some circumstances. Freeman's *injury* occurred on April 12, although it did not develop into a condition of *disability* until several months later. The board clearly followed the statute in directing that the compensation period cease 425 weeks after the date of injury.

◼ In its original order the board provided that the award should run 425 weeks from the date of *disability* (September 16). On the employer's petition for reconsideration the board changed the order to measure the period from the date of *injury*. Freeman maintains that this constituted a reconsideration of the *merits* of the case, which the board could not do under KRS 342.281. We are not so persuaded; rather, we think that the change amounted merely to a correction of error patently appearing on the face of the original order, of the very kind KRS 342.281 contemplates can be made.

The judgment is affirmed, on the direct appeal and on the cross-appeal.

All concur.