Jentry C. SMITH, Sr., Appellant,

v.

CARDINAL CONSTRUCTION COMPA-NY; Special Fund; Lloyd R. Edens, Administrative Law Judge; and Kentucky Workers' Compensation Board, Appellees.

No. 1999–SC–0555–WC.

Supreme Court of Kentucky.

March 23, 2000.

Jack W. Richendollar, Catlettsburg, for appellant.

R. Craig Reinhardt, Michael E. Liska, Lexington, for appellee Cardinal Construction Co.

John William Burrell, Benjamin C. Johnson, Labor Cabinet—Special Fund, Frankfort, for appellee Special Fund.

## OPINION

This workers' compensation appeal concerns whether the Administrative Law Judge (ALJ) erred in determining that claimant failed to give his employer timely notice that a work-related accident had resulted in a cervical injury as well as a lower back injury. KRS 342.185.

Claimant operated a bulldozer at a landfill. He alleged that he had injured his back on January 7, 1996, when he slipped on snow and ice, causing him to fall from the deck of the bulldozer onto the ground. He testified that on the following day he fell while attempting to open a gate and was found by a co-worker who was operating a snowplow at the site. Claimant continued to work after the injury, thinking that he was "stoved up" and that his condition would improve. A few days later, the employer's safety manager contacted

claimant regarding his annual physical examination, at which time claimant informed him of the accident and indicated that his back and legs were bothering him.

On January 12, 1996, claimant reported for his scheduled physical, at which time he was examined by Dr. Paul Craig, a specialist in occupational medicine. Claimant exhibited severe symptoms of acute nerve root compression which led Dr. Craig to order an emergency MRI of the lumbar spine. Claimant indicated that he had experienced no prior problems and related the onset of his symptoms to the fall at work. The MRI revealed a large herniated disc at L4–5 and a bulging disc at L2–3, causing Dr. Craig to recommend immediate hospitalization. He noted that claimant appeared reluctant to admit the seriousness of his symptoms and wanted to delay hospitalization until the following Monday. Dr. Craig informed the safety manager of claimant's diagnosis and of the recommendation. Claimant returned on January 15, 1996, at which time his symptoms were more severe. He was hospitalized on that date.

Medical reports which were later introduced into evidence indicated that lumbar surgery was performed by Dr. James S. Powell on January 17, 1996. The operative record indicates that claimant's symptoms of foot drop had become bilateral and that he had developed urinary problems due to his injury over the preceding weekend. It also indicates that, in addition to the lumbar injury and related problems, claimant had sustained a central cord injury secondary to the fall and that he exhibited elements of bilateral carpal tunnel syndrome due to nerve compression and irritation "from his work related issues." It described the "special care" required when intubating the claimant for surgery, including the need to keep his head in a

neutral position because of the central cord injury.[1]

In a report dated February 5, 1996, Dr. Deitch reported concerning claimant's intensive inpatient rehabilitation therapy following the lumbar surgery. The report notes that among claimant's complaints following the fall at work were neck pain, numbness and tingling in his hands, and weakness of his arms. Dr. Deitch's diagnostic impressions included carpal tunnel syndrome, post-surgical status, and cauda equina syndrome.

Claimant testified that approximately three weeks after the surgery he began to have spasms and shaking in his arms and paralysis in his upper extremities. On an insurance form, dated March 4, 1996, Dr. Powell indicated that he had performed lumbar surgery and that a cervical discectomy and fusion were contemplated. Although Dr. Powell did not respond to a question concerning whether those services related to a work injury, he did indicate that they were related to the January 7, 1996, accident in response to a later question. In response to another question, Dr. Powell indicated that claimant would never be able to return to work.

On March 11, 1996, claimant signed a Form 101 application for workers' compensation benefits in which he alleged a work-related back injury as a result of the fall. The nature of the injury was described as "HERNIATED DISC L3–4, L4–5, L5, S1." The claim was filed on March 13, 1996. Among the information appended to the claim were the March 4, 1996, report from Dr. Powell; the February 5, 1996, report by Dr. Deitch; and what appears to be an insurance form, dated March 2, 1996, in which claimant described his injuries as "5 ruptured disc lower back, unknown injuries to cervical."

In a follow-up examination which Dr. Powell performed on March 13, 1996,

---

1. A January 16, 1996, MRI of claimant's cervical spine was introduced by the employer at the deposition of Dr. Craig on June 27, 1996. The MRI indicated compression at the C5–6 disc space due to a bulging disc and degenerative spurring, degenerative bulges at C4–5 and C3–4, and no evidence of a herniated disc.

claimant reported progressive numbness and progressive weakness in his upper extremities. Dr. Powell reported "radical" deterioration in the clinical condition of claimant's arms and hands over the previous three days due to progressive spinal cord damage and indicated that claimant would be hospitalized "for emergent surgery." Surgery to multiple levels of the cervical spine was performed on March 15, 1996, rather than on March 19, as previously scheduled. A second cervical surgery was performed in May, 1996.

Dr. Craig was deposed on June 27, 1996, and testified concerning his findings in January, 1996. At the deposition, counsel for the employer introduced the January 16, 1996, MRI of claimant's cervical spine. Dr. Craig testified that he and Dr. Powell had discussed claimant's cervical condition after he received a report from Dr. Powell. Dr. Powell had reported the presence of pre-existing degenerative changes and stenosis in the cervical spine. He indicated that the condition was asymptomatic before the January 7, 1996, accident but resulted in additional stenosis and compression of the spinal cord as a result of the accident. It was for that reason that the cervical surgery was performed. Dr. Craig also testified that claimant sustained a contusion of the spinal cord in the fall. On cross-examination by the employer, Dr. Craig testified that there was no indication that claimant experienced symptoms from his cervical condition before the fall at work. He agreed with Dr. Powell that the condition was dormant before the injury and was aroused into disability as a result of the injury.

Dr. Phillips, an emergency room physician, reported in July, 1996, based solely upon a review of claimant's file. In her opinion, claimant's back condition was chronic and progressive, with a possible acute exacerbation. She testified that the chronic degenerative findings in the cervical area were not related to the alleged fall or to the operation of the bulldozer.

The employer's carrier denied payment of medical expenses relative to the cervical surgeries on the basis that the expenses were not work-related and/or not related to the lumbar injury for which a claim had been filed. In July, 1996, claimant moved to compel payment. A prehearing conference memorandum, dated August 14, 1996, indicates that the claim would be amended to include the cervical condition. It also indicates that questions remained concerning the work-relatedness of the cervical condition and notice of the cervical condition. A motion to amend the claim was filed on August 29, 1996. On that same date, claimant moved to introduce the medical reports of Dr. Powell into evidence.

Earl Whitmore, the employer's safety manager, was deposed on September 26, 1996. When asked when he first became aware that claimant was alleging a neck injury, he replied, "I think one of the doctors called or something. But I—gee, I don't remember when that was. I don't have a date." He indicated that it was some time after the injury reports were prepared. Each of the three reports which were introduced at the deposition was dated either January 11 or 12, 1996.

One co-worker testified that on January 7, 1996, after he plowed by the gate to the landfill, he found claimant on the ground, complaining of back pain. Claimant was unable to get into the co-worker's truck, so he drove his own car from the dump site. Another co-worker testified that he visited claimant in the hospital after the lumbar surgery and that claimant told him he had also suffered a cervical injury.

The employer asserted to the ALJ that it had received no notice of a cervical injury and that the cervical condition was not work-related. Claimant asserted that his unrebutted testimony established that a rehabilitation nurse had accompanied him on his visits to Dr. Powell between January and March, 1996, and had access to all of his medical records. He also asserted that Mr. Whitmore's testimony

indicates that the employer was aware of the cervical injury. He argued that although he may not have given formal notice of a claim for a cervical injury, the employer's insurance carrier certainly was aware from his medical records that the cervical injury was a result of the January, 1996, accident.

The ALJ determined that claimant's testimony and that of Dr. Craig established that both the lumbar injury and the cervical injury resulted from the work accident. The ALJ determined that the four-day delay in giving notice of the accident and of the lumbar injury was reasonable in view of claimant's initial belief that his condition was not serious and would improve. With regard to notice of the cervical condition, the ALJ stated as follows:

> The Plaintiff testified that he began having cervical problems while in the hospital, and the record reflects that he was hospitalized for his low back surgery on January 17, 1996. Plaintiff's claim was filed on March 13, 1996, and contained a claim for injury to the lumbar area. The March 13, 1996, report of Dr. Powell to Dr. Craig indicates that the Plaintiff's numbness and weakness in the upper extremity had increased over the last three day period. The Plaintiff's Form 101 was signed on March 11, 1996, within this three day period and does not indicate a problem with the upper extremities or the cervical area. The Plaintiff did not seek benefits for the cervical condition nor does the record reflect notice to the Defendant/Employer until the August 29, 1996, motion to amend the claim to include cervical disc injury. While the Defendant/Employer received timely notice of the accident and the lumbar injury, notice was not sufficient to apprise the Employer of the existence of the claim for compensation for the cervical injury. In light of the seven month delay between the onset of symptoms of neck pain and notice to the Defendant/Employer, I find notice of the cervical condition was not given as soon

as practicable. *Reliance Diecasting Co. v. Freeman*, Ky., 471 S.W.2d 311 (1971); *T.W. Samuels Distillery Co. v. Houck*, Ky., 296 Ky. 323, 176 S.W.2d 890 (1943).

As a result, the ALJ concluded that medical expenses relative to the cervical condition were not compensable. After claimant reached maximum medical improvement, the ALJ determined, in a subsequent decision, that claimant was totally, occupationally disabled from the lumbar injury, by itself. That decision reiterated the findings that claimant had failed to give notice of the cervical injury as soon as was practicable and that the written notice which was given in the context of amending the claim was untimely.

Claimant appealed the determination that he had failed to give timely notice of the claim for a cervical injury, relying upon *Newberg v. Sleets*, Ky.App., 899 S.W.2d 495 (1995). His arguments were rejected by the Workers' Compensation Board and the Court of Appeals. This appeal followed.

Unlike KRS 342.316(2)(a), which requires timely notice of a "claim" for occupational disease, KRS 342.185 provides that notice of a work-related "accident" must be given "as soon as practicable after the happening thereof." KRS 342.190 indicates that the notice requirement includes, among other things, notice of the time, place, nature, and cause of the accident. It also includes a description of the nature and extent of any resulting injury. KRS 342.200 provides that an inaccuracy in complying with the requirements of KRS 342.190 will not render notice "invalid or insufficient ... unless it is shown that the employer was in fact misled to his injury thereby." KRS 342.200 also provides that a delay in giving notice is excused if the employer "had knowledge of the injury" or the delay was due to mistake or other reasonable cause. Notice of a work-related accident and of a resulting injury may be given in the context of filing a claim; however, such notice may or may

not be timely depending upon the circumstances which are present. KRS 342.190; *Peabody Coal Co. v. Powell,* Ky., 351 S.W.2d 172 (1961).

The notice provisions have remained substantially the same since the inception of the Kentucky Workers' Compensation Act. As early as 1919, the Court explained that notice of a work-related accident must include information concerning the nature and extent of an injury sustained in the accident but that a worker was not required to give notice of "the full or exact nature or extent of the injury ." Instead, the employer:

> should have such knowledge of its nature and extent as would enable him to take such steps as might be deemed prudent or advisable to provide the necessary medical or other attention that the nature or extent of the injury seemed to demand. We say this because it is provided in [KRS 342.200] that the written notice shall not be held invalid or insufficient by reason of any inaccuracy, unless it be shown that the employer was in fact misled to his injury thereby.... It is only important that the employer should have notice of the injury as soon as practicable, in order that he may have opportunity to investigate the cause of the injury, as well as the nature and extent of it, and take such action as he may think advisable to protect his interest.... [W]here the claim is meritorious and the employer has not been prejudiced by the delay, the want of mistake or reasonable cause that would be sufficient to excuse the giving of the notice sooner should be very convincing, to authorize the rejection of the claim.

*Bates & Rogers Construction Co. v. Allen,* Ky., 183 Ky. 815, 210 S.W. 467, 472–74 (1919).

The Court has since determined that the purposes of the notice requirement are threefold: to provide prompt medical treatment in an attempt to minimize the worker's ultimate disability and the employer's liability, to enable the employer to make a prompt investigation of the circumstances of the accident, and to prevent the filing of fictitious claims. See *Harlan Fuel Co. v. Burkhart,* Ky., 296 S.W.2d 722 (1956). Workers who failed to give timely notice of the work accident or of the injury for which compensation was being claimed have been penalized in instances where the worker's conduct undermined the purposes of the requirement and was not explained by a reasonable cause. See *Whittle v. General Mills, Inc.,* Ky., 252 S.W.2d 55 (1952), (worker gave no notice of accident and denied a work-related injury upon quitting employment but alleged an accident and injury five weeks later); *T.W. Samuels Distillery v. Houck,* Ky., 296 Ky. 323, 176 S.W.2d 890 (1943), (medical evidence of causation was controverted and a five-month delay in giving notice of accident thwarted the employer's opportunity to investigate); *Buckles v. Kroger Grocery & Baking Co.,* Ky., 280 Ky. 644, 134 S.W.2d 221 (1939), (reason for delay in giving notice that hernia had resulted from accident was to avoid medical treatment and to continue working during the lucrative holiday season).

The law does not require the impossible; hence, the Court has determined that a worker was not obliged to give notice of a latent injury until he became aware that a compensable injury had been sustained. *Turner, Day, and Woolworth Handle Co. v. Morris,* Ky., 267 Ky. 217, 101 S.W.2d 921 (1937). Similarly, where the employer was notified of a work-related accident and of what appeared to be minor injuries, the worker's failure to inform his employer of another, more serious injury of which he was unaware was not unreasonable. *Proctor and Gamble Manufacturing Co. v. Little,* Ky., 357 S.W.2d 866 (1962). Where an employer was informed of a work accident, and an injury resulting from the accident did not become apparent until some time thereafter, further notice was not required until the injury developed into a compensa-

ble state. *Reliance Diecasting v. Freeman*, Ky., 471 S.W.2d 311 (1971).

In the instant case, it is no longer disputed that claimant gave timely notice of the accident. What the employer has asserted is that it also was entitled to timely notice of each of the resulting injuries. The ALJ determined that claimant gave his employer timely notice of the lumbar injury but failed to give timely notice of the cervical injury; therefore, this appeal turns upon whether the ALJ was compelled to determine that claimant gave adequate notice of "the nature and extent of the injury sustained" as required by KRS 342.190.

We begin by noting that *Freeman* is factually distinguishable from the instant case because, here, the employer was notified that claimant had sustained a serious injury when it was informed of the work accident. The employer's complaint is that it was informed only of the lumbar injury at the time. Claimant has asserted, however, that the employer had actual notice of the cervical injury as early as the January, 1996, hospitalization.

■ Contrary to the ALJ's finding that notice of the cervical injury was not given until seven months after it occurred, the record indicates that the employer was informed that claimant suffered a cervical injury as well as a lumbar injury no later than March, 1996, when the claim was filed. Although the Form 101 claim which claimant signed on March 11, 1996, referred only to the lumbar injury, the documents which were filed with the claim clearly indicated that claimant had also sustained a cervical injury, that surgery was contemplated, and that Dr. Powell attributed the cervical injury to the work-related accident. Notice and the filing of a claim are separate matters. Read together, KRS 342.185 and KRS 342.190 require that notice of an accident and of the nature and extent of a resulting injury be given

"as soon as practicable;" however, KRS 342.185 permits the filing of a claim for the injury within two years after the accident or last voluntary payment by the employer.[2] Despite the fact that claimant neglected to list the cervical injury on the initial claim, the documentation which was filed with the claim put the employer on notice that claimant had sustained a cervical injury as well as a lumbar injury in the work-related accident. The evidence compelled a finding that the employer received notice of the cervical injury no later than when it received the claim and supporting documentation in March, 1996.

Dr. Craig informed Mr. Whitmore on January 12, 1996, that claimant had sustained a serious injury to his lumbar spine as a result of the accident, that claimant's symptoms were severe, and that surgery would be required. Under those circumstances, it cannot seriously be disputed that the employer had motivation to investigate the circumstances of the accident or that there was a distinct possibility of injury to other areas of claimant's spine. It is also clear that claimant was under continuous medical treatment from the time that the seriousness of his back injury became apparent. The operative note for the lumbar surgery and the rehabilitation evaluation clearly indicate the presence of the cervical injury. Dr. Craig and Dr. Powell were aware of claimant's activities in the days following the work-related accident, and both testified that the cervical injury was caused by the work accident; furthermore, the ALJ determined that the cervical injury was caused by the accident, and the finding is undisputed. There is no assertion that the medical treatment which was given for the cervical injury was not appropriate, and there is no assertion that, had the employer known any earlier that claimant's back injury involved the cervical spine as well as the lumbar spine, there is

**2.** Here, the motion to amend the claim in order to include the cervical injury was filed in August, 1996, within two years after the accident. It is not disputed that a claim for the cervical injury was made well within the applicable period of limitations.

anything it could have done to reduce claimant's disability or its ultimate liability.

■ Having considered the foregoing, we conclude that the purposes for which the notice requirement was created were accomplished in this case and that the employer was not prejudiced by any delay in being informed of the cervical injury. Contrary to the employer's assertion, authority which addresses the relevance of employer prejudice in claims for occupational disease, where the notice requirement is controlled by KRS 342.316, is not dispositive with regard to claims for injury which are controlled by KRS 342.185. This is not a case where a lack of prejudice is the only justification for excusing any delay in informing the employer that the injury to claimant's spine was more extensive than Dr. Craig diagnosed on January 12, 1996.

The ALJ determined that the employer had timely notice of the accident and of an injury to the lumbar region of claimant's back; furthermore, the ALJ determined that both the cervical injury and the lumbar injury resulted from the work-related accident. Those findings are no longer the subject of appeal. *Bates & Rogers Construction Co. v. Allen, supra,* and *Harlan Fuel Co. v. Burkhart, supra,* make it clear that the purpose of the notice requirement is not to create a technical barrier to meritorious claims, and we are aware of no constructive purpose to be served by an overly technical construction of the notice requirement on the facts which are present in this case. We note that, in medical parlance, "The *back* is a unit of the whole man. It may be divided into three sections: the cervical, dorsal, and lumbar regions." *Newberg v. Thomas Industries,* Ky.App., 852 S.W.2d 339, 341 (1993). It is apparent that claimant's initial focus, as well as that of his physician and his attorney, was on the injury to the lumbar region because it produced severely disabling symptoms and required early surgical intervention. Although the injury to the cervical region became symptomatic in January, 1996, and was mentioned in the contemporaneous medical records, it was not until March, 1996, that claimant began to experience a rapid deterioration in his condition and to require medical treatment for that region of his back. As we have already determined, the employer was informed that the injury to claimant's back involved the cervical region as well as the lumbar region no later than when it received the claim in March, 1996. We recognize that it would have been better practice to have given the employer written notice of both conditions as soon as they became apparent. We are convinced, however, that under the particular circumstances which are presented by this appeal, the two-month delay in giving the additional information to the employer was not so unreasonable that an otherwise meritorious claim should be dismissed.

The decision of the Court of Appeals is reversed, and the claim is remanded to the ALJ for further proceedings with regard to the claim for the cervical injury.

All concur.