# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: SEPTEMBER 28, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2016-SC-000454-WC

IRVING MATERIALS, INC.                                            APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                     CASE NO. 2015-CA-001478-WC
WORKERS' COMPENSATION BOARD
NO. 14-WC-01672

RAYMOND TUNGETT; HON. STEVEN G.                APPELLEES
BOLTON, ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD

## MEMORANDUM OPINION OF THE COURT

### REVERSING

An administrative law judge (ALJ) dismissed Appellee Raymond Tungett's claim for workers' compensation benefits arising out of an alleged work-related injury on the grounds that Tungett had not notified his employer, Appellant Irving Materials, Inc., "as soon as practicable" after the accident as required by Kentucky Revised Statute (KRS) 342.185. The Board affirmed the dismissal but the Court of Appeals, in a split decision, reversed and "remanded to the ALJ to fashion a benefit award." For the reasons stated herein, we reverse the Court of Appeals and reinstate the ALJ's Opinion and Order.

### RELEVANT FACTS

The facts surrounding Tungett's claim are disputed. Tungett testified that he began working for Irving in 2011 and was a concrete truck driver who

delivered to construction sites. He testified that he injured his back on Saturday, May 31, 2014, when he was using a 2x4 to clean "shotcrete" out of the chute of his truck after it had hardened. He claimed his back "popped" and he felt pain shooting down his leg. He testified that he called his supervisor, Kevin Fernander, to get directions about whether he should return to the site since there was still concrete in his truck and that he also told Fernander that he had hurt his back trying to clean out the chute. Tungett said he had problems over that weekend but returned to work on Monday and then missed work on Tuesday and Wednesday. He worked on Thursday and fell off his truck, injuring his back although that incident was not mentioned in his claim filed in September 2014. He went to an immediate care center on June 3, 2014, but they would not treat him because he claimed a work injury and did not have the necessary paperwork so he went to a different immediate care center the next day and said his back problem was not work-related. He continued treatment until his private health insurance lapsed. He testified that at one point, at the request of his employer, he went into Irving's office and wrote down a description of how he had injured his back on May 31 and also on June 5, when he fell off his truck. From other witnesses, it appears that it was June 9 when Tungett went to Irving's office and wrote down his description of what had occurred. The document does not appear in the record.

Fernander was very complimentary of Tungett, who he supervised for about three years, and testified that he considered him a good employee and honest guy. Fernander dealt with incident reports for the company and said

2

that all employees, including Tungett, were trained on the necessity of completing an incident report as soon as possible after an incident occurred. He acknowledged the May 31 phone call but testified by deposition and at the hearing that he was certain that Tungett never mentioned injuring his back when cleaning out the truck's chute. He said Tungett was only calling to get direction about whether he should go back to the work site or go home for the day. Fernander said they joked about it being "Miller time" for the workers at the site and he told Tungett not to worry about going back with whatever concrete was left in his truck. He saw Tungett at work on Monday and then on Tuesday he got a call from him stating that his back was hurt and he could not move. Fernander was certain that Tungett never mentioned a work accident and, in fact, said in the phone call that he did not know what he had done to his back. After Tungett fell on Thursday, Fernander heard that he was going to get his back checked out and that was the last time Fernander ever heard from him.

Mike Tolin, Irving's safety manager, testified about the driver safety training and orientation that all drivers for the company must complete. He was aware of Tungett's fall from his truck on June 5. That same day he was contacted by an immediate care center about Tungett having sought treatment earlier in the week for an alleged work injury on May 2, 2014. (This date may have been a clerical error but it is what the medical records reflected.) Tolin asked Tungett that day to come into the office to tell him what was going on but Tungett did not come until June 9. Tolin said that at that time Tungett

3

related his back injury to his work but he did not relate it to a particular event or accident. Tolin also testified that Irving had bought another trucking company, Riverton Trucking, Inc., and that in July 2014 they discovered that Tungett had applied to work there. He indicated he was ready and able to go to work, apparently not realizing that his application was being submitted to management personnel at Irving.

The ALJ heard this proof as well as conflicting medical proof, the latter being unnecessary to recount given the issue on which the ALJ dismissed. The ALJ, in a lengthy opinion, concluded that "whether claimant sustained a work-related injury on May 31, 2014 comes down to the credibility of the witnesses." The ALJ reviewed the conflicting testimony and concluded that he found Fernander more credible regarding the issue of notice of an alleged injury before stating:

> Initially, without any notice to his employer, claimant attempted to seek treatment for his low back as a work injury, but alleged an injury date of May 2, 2014 – not May 31, 2014. When claimant was told by that medical provider that he needed to supply paperwork related to the work injury, instead of simply getting the paperwork, which could have been easily done if he had a legitimate work injury, he instead went to a different provider and sought treatment through his private health insurance. It was only when the health insurance coverage lapsed that claimant again began alleging his back condition was related to a May 31, 2014 work injury.

> I am unable to determine any reason as to why Kevin Fernander or Mike Tolin would not be forthright in their testimony. It does impact on Plaintiff's credibility that he has alleged himself to be incapable of working throughout this claim, due to his low back condition, only to unknowingly commit the blunder of actually applying for a driver position with another concrete company that had recently been purchased by this defendant. He

4

then admitted that he had actually applied for employment with numerous different employers.

> The bottom line is that claimant failed to meet his burden of proof that he sustained a work-related injury. His low back pain clearly had an insidious onset after waking up one morning – as he told Kevin Fernander and as supported by some of the medical records. Claimant's own accounts as to the onset of his low back pain have been repeatedly inconsistent.

The ALJ further concluded that Tungett never really reported a work accident to Irving, instead stating in the June 9 meeting that he had not suffered a specific injury at work. In the ALJ's view, Tungett abandoned his job and then undermined his injury claim when he applied for the Riverton job. Ultimately, the ALJ concluded that Tungett never notified his employer of an injury: "He claims [notice] was given to several people at the defendant's place of business. However, he introduced no probative evidence to support that proposition." In his Order on Petition for Reconsideration, the ALJ wrote: "Finally, as was clearly stated in the Opinion and Order, the failure to give the required notice was the sole ground upon which I based my decision."

The Board, citing *Granger v. Louis Trauth Dairy*, 329 S.W.3d 296 (Ky. 2010), rejected Tungett's argument that a substantial amount of time must elapse before a notice will be untimely and that the employer must be prejudiced by the delay. Noting that Tungett had the burden of proving all elements of his claim, the Board found substantial evidence supported the ALJ's finding that notice was not given as soon as practicable and, moreover, that there was not compelling evidence to the contrary in the record, the standard necessary for reversing the ALJ's factual finding.

5

The Court of Appeals reversed in a 2-1 opinion, holding that although "there was conflicting evidence as to when Tungett provided notice, the employer knew of the work-related injury as early as June 5, 2014, when Tolin learned Tungett attempted to have Irving pay for his medical treatment." By this finding, the court concluded that when Irving heard from the immediate care center that Tungett was claiming a work injury, notice had been given; the employer's awareness of the claim was reflected in the fact that Mike Tolin, Irving's safety manager, responded by calling Tungett in for a meeting. (Although the appellate court did not note it, Tungett did not attend that meeting but instead went into Irving's office on June 9.) The appellate opinion ends with the court's conclusion that Tungett was not required to give further notice "as a matter of law" and that the ALJ erred,

> notwithstanding evidence that Irving did not learn the exact circumstances surrounding the accident for another week. The delay had no prejudicial effect for Irving, as Tungett received prompt medical treatment for his non-emergency injury and the uncontested subject matter of Tungett's post-injury conversation with Fernander – namely that concrete was hardening in the truck chute – corroborates Tungett's version of events for any investigative purposes. . . .

The Court of Appeals reversed the Board and remanded to the ALJ "to fashion a benefit award." The dissenting judge did not write a separate opinion.

## ANALYSIS

A workers' compensation claimant has the burden of proving every element of his claim, *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735 (Ky. App. 1984), including the element of notice to his employer. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). The ALJ is the fact-finder and has sole

6

authority to determine the quality, character and substance of the evidence. *Square D Co. v. Tipton*, 862 S.W.2d 308, 309 (Ky. 1993). When evidence is conflicting, "which evidence to believe is the exclusive province of the ALJ." *Id.* (citing *Pruitt v. Bugg Brothers*, 547 S.W.2d 123 (Ky. 1977)). On appellate review, the issue is whether substantial evidence of probative value supports the ALJ's findings. *Whittaker v. Rowland*, 998 S.W.2d 479, 481-82 (Ky. 1999). If the party with the burden of proof fails to convince the ALJ, that finding stands unless on appellate review that party can establish that the evidence was so overwhelming that it compels a favorable finding. *Special Fund*, 708 S.W.2d at 643.

Here, Tungett did not, in the ALJ's and the Board's views, meet his burden of proving timely notice of his work accident and injury to his employer. In *Smith v. Cardinal Const. Co.*, 13 S.W.3d 623, 626-27 (Ky. 2000), this Court discussed the concept of notice for a work-related accident:

> Unlike KRS 342.316(2)(a), which requires timely notice of a "claim for occupational disease," KRS 342.185 provides that notice of a work-related "accident" must be given "as soon as practicable after the happening thereof." KRS 342.190 indicates that the notice requirement includes, among other things, notice of the time, place, nature, and cause of the accident. It also includes a description of the nature and extent of any resulting injury. KRS 342.200 provides that an inaccuracy in complying with the requirements of KRS 342.190 will not render notice "invalid or insufficient . . . unless it is shown that the employer was in fact misled to his injury thereby." KRS 342.200 also provides that a delay in giving notice is excused if the employer "had knowledge of the injury" or the delay was due to mistake or other reasonable cause. Notice of a work-related accident and of a resulting injury may be given in the context of filing a claim; however, such notice may or may not be timely depending upon the circumstances

7

which are present. KRS 342.190; *Peabody Coal Co. v. Powell*, Ky., 351 S.W.2d 172 (1961).

*See also Louis Trauth Dairy*, 329 S.W.3d at 298. Although "practicable" is not a defined term in KRS Chapter 342, it is commonly defined to mean "capable of being done." *Webster's II New College Dictionary*, p. 867 (1995). Thus, KRS 342.185 requires the employee to give notice to the employer as soon as it is capable of being done after an accident.

Here, the ALJ found that Tungett had failed to offer probative evidence of having notified Irving of his alleged May 31, 2014 accident as soon as practicable. In so ruling, the ALJ found Kevin Fernander and Mike Tolin's testimony more credible than that of Tungett. The ALJ believed Fernander's testimony that Tungett did not mention an accident in the May 31 phone call and that he did not mention an accident the following Tuesday when he called in saying he could not work due to having "done something" to his back. The ALJ apparently also rejected Tungett's claim that he tied his back injury to the May 31 accident when he met with Tolin on June 9 and wrote out a description of what had occurred that day and when he fell from his truck on June 5.[1] Instead, the ALJ believed Tolin's consistent testimony (both by deposition and at hearing) that Tungett did not identify a workplace accident, a "specific mechanism of injury at work to explain the back problems." In the ALJ's view,

---

[1] There is no document in the record which would qualify as the statement that Tungett claims he wrote out on June 9, 2014.

"it was only when the health insurance coverage lapsed that claimant again began alleging his back condition was related to a May 31, 2014 injury."[2]

Like the Board, we find substantial evidence supporting the ALJ's findings. Moreover, it is not possible to conclude that the evidence of record "compelled" a finding that Tungett gave notice as soon as practicable. The ALJ could have chosen to believe that Tungett gave notice in the May 31 phone call or the following week by phone or when he came into work. He could have chosen to believe that Tungett laid out his claim to Irving when he met with Tolin on June 9. But the ALJ did not believe that testimony, finding instead that the first true notice of an alleged workplace accident given by Tungett to his employer was the filing of the September 2014 claim. The ALJ weighed the evidence and made a finding that is supported by substantial evidence.

The Court of Appeals in a conclusion quoted above, reversed and found that "as a matter of law" the employer had notice on June 5 when it was contacted by the immediate care center about Tungett having presented and alleged a workplace injury. In that court's opinion, Tungett was not required to give further notice. This was error, for two reasons. First, it is not the province of the Court of Appeals to substitute its factual findings regarding notice for those of the ALJ. Second, even if the notice from the immediate care center

---

[2] In context, it appears that the ALJ believed Tungett's testimony that he claimed a work-related injury to the first immediate care center he visited, although he used a May 2 date (which could have been a clerical error) instead of May 31 for the accident. However, the ALJ did not believe that Tungett ever supplied notice of a May 31 accident to his employer until he filed his injury claim on September 3, 2014.

9

could be shoe-horned into KRS 342.200, which excuses a worker's delay in giving notice if the employer "had knowledge of the injury," it would still be insufficient because Irving received information about an alleged May 2 injury, not the May 31, 2014 injury that Tungett relied on when he filed his September 3, 2014 claim.

Finally, on appeal, Tungett contends that in any event his case should be remanded so the ALJ can consider the impact of KRS 342.200. That statute excuses a worker's delay in providing notice where the employer has knowledge of the injury. As noted above, the ALJ found, as he was entitled to do, no evidence that Irving had any knowledge of the alleged May 31 accident prior to the filing of Tungett's claim in early September. KRS 342.200 also excuses delay as a result of "mistake" or "other reasonable cause." Tungett never alleged any mistake or reasonable cause for delaying notice, claiming instead, albeit unsuccessfully, that he gave notice the very same day the accident occurred. The ALJ did not err in expressly finding KRS 342.200 "inapplicable" to this case. There are no grounds for remanding on that issue.

## CONCLUSION

Substantial evidence of record supports the ALJ's finding that Tungett did not give notice to his employer "as soon as practicable" of his alleged May 31 work-related injury. Moreover, no sound basis exists for concluding that the evidence compels a contrary conclusion. Therefore, we reverse the opinion

10

of the Court of Appeals and reinstate the Opinion and Order of the ALJ dismissing the claim for failure to give timely notice pursuant to KRS 342.185.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Douglas Anthony U'Sellis
U'Sellis & Kitchen, PSC


COUNSEL FOR APPELLEE,
Raymond Tungett:

Nicholas Murphy

COUNSEL FOR AMICUS CURIAE,
Kentucky Chapter of American
Federation of Labor and Congress
of Industrial Organizations
(AFL-CIO):

Mary Michele Cecil
Caslin & Cecil